# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re*: Application Pursuant to 28 U.S.C. § 1782 of<br>THE REPUBLIC OF THE GAMBIA<br>Attorney General's Chambers<br>Ministry of Justice<br>Marina Parade<br>Banjul<br>The Gambia<br><br>        Petitioner,<br><br>v.<br><br>FACEBOOK, INC.<br>575 7th Street, NW<br>Washington, DC 20004,<br><br>        Respondent. | No. 20-mc- |

## DECLARATION OF TIMOTHY P. O'TOOLE IN SUPPORT OF THE REPULBIC OF THE REPUBLIC OF THE GAMBIA'S APPLICATION FOR ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, TIMOTHY P. O'TOOLE, declare as follows:

1.    I am a member of the law firm Miller & Chevalier Chartered. I practice at the firm's Washington, D.C. office located at 900 16th Street, NW, Washington, D.C. 20006. My practice focuses on white collar defense and international trade issues. I am a member of the Bar of the District of Columbia and act as counsel for the applicant, the Republic of The Gambia, a sovereign State located on the coast of West Africa, in the *Application of the Convention on the Prevention and Punishment of the Crime of Genocide (The Gambia v. Myanmar)*, which is

currently pending before the International Court of Justice in The Hague, The Netherlands. I submit this declaration in support of The Gambia's application pursuant to 28 U.S.C. § 1782 for an order directing that Facebook, Inc. produce discovery for use in connection with the ICJ Proceedings.

2.   I submit this declaration upon personal knowledge gained in connection with my review of materials filed in and related to The Gambia's litigation against Myanmar in the ICJ Proceedings.

**I.   THE ICJ PROCEEDINGS**

3.   On November 11, 2019, The Gambia commenced judicial proceedings against the Republic of the Union of Myanmar ("Myanmar"), a sovereign State located in Southeast Asia, before the International Court of Justice in The Hague (the "ICJ Proceedings"). The case is recorded on the ICJ's docket (known as the General List) as the Application of the Convention on the Prevention and Punishment of the Crime of Genocide (The Gambia v. Myanmar). The Gambia and Myanmar are the only parties to the case.

4.   The ICJ Proceedings concern Myanmar's state responsibility for acts of genocide against its Rohingya population and Myanmar's violations of its obligations under the 1948 Convention on the Prevention and Punishment of the Crime of Genocide (the "Genocide Convention"), including the obligations to prevent genocide, to punish genocide, and not to commit genocide. The Gambia contends that Myanmar is responsible for acts of genocide committed against the Rohingya people, an ethnic and religious minority in Myanmar. A finding that acts of genocide occurred against the Rohingya requires a showing that Myanmar acted with the intent to destroy, in whole or in part, the Rohingya people.

5.   Independent investigative efforts conducted under the auspices of the United Nations and corroborated by international human rights organizations and other credible sources

have concluded that the Myanmar military and security forces committed genocidal acts against the Rohingya, in violation of the Genocide Convention, during "clearance operations" conducted in 2016 and 2017. The most detailed and significant fact-finding effort to date has been the UN Human Rights Council's Independent International Fact-Finding Mission on Myanmar ("UN Fact-Finding Mission"). In reports released in September 2018[1] and September 2019,[2] the UN Fact-Finding Mission provided extensive details regarding Myanmar's commission of genocidal acts, including specific findings about Myanmar's genocidal intent. These reports also document the ways in which social media was used to disseminate hate speech against the Rohingya and incite acts of genocide against them.[3] The UN Fact-Finding Mission concluded that Myanmar's dissemination and tolerance of hate speech, including on social media, was an indicator of its genocidal intent.[4] Reporting by media organizations indicates that this type of hate speech was disseminated via Facebook, among other social media platforms.[5]

6. Those findings have been corroborated by non-governmental organizations and other sources. For example, the United States Holocaust Memorial Museum[6] and the Public

---

[1] *Report of the detailed findings of the Independent International Fact-Finding Mission on Myanmar*, UN Doc. A/HRC/39CRP.2, U.N. Human Rights Council (Sept. 17, 2018), https://www.ohchr.org/Documents/HRBodies/HRCouncil/FFM-Myanmar/A_HRC_39_CRP.2.pdf (*hereinafter* "2018 Detailed FFM Report").

[2] *Detailed findings of the Independent International Fact-Finding Mission on Myanmar*, UN Doc. A/HRC/39/CRP.2, U.N. Human Rights Council (Sept. 16, 2019), https://www.ohchr.org/Documents/HRBodies/HRCouncil/FFM-Myanmar/20190916/A_HRC_42_CRP.5.pdf (*hereinafter* "2019 Detailed FFM Report").

[3] *See* 2018 Detailed FFM Report ¶¶ 1342-1354.

[4] *See* 2019 Detailed FFM Report ¶ 224.

[5] *See, e.g.*, Steve Stecklow, *Facebook isn't alone*, REUTERS (Aug. 15, 2018), https://www.reuters.com/investigates/special-report/myanmar-facebook-hate/.

[6] *Museum Finds Compelling Evidence Genocide was Committed Against Rohingya, Warns of Continued Threat*, U.S. Holocaust Memorial Museum (Dec. 3, 2018),

International Law and Policy Group,[7] which investigated the issue with funding from the U.S. State Department, have both concluded that acts of genocide were committed against the Rohingya by Myanmar state actors. The United States has placed sanctions on various Myanmar state officials for their role in atrocity crimes against the Rohingya, including some who may have used their Facebook accounts to incite and carry out these crimes.[8]

7. On December 10-12, 2019, oral proceedings were held on The Gambia's request for provisional measures to protect its rights and the rights of the Rohingya during the pendency of the ICJ Proceedings. On January 23, 2020, in a unanimous ruling, the ICJ ordered Myanmar to take all measures within its power to prevent the commission of all acts of genocide against the Rohingya, including killings, causing serious bodily or mental harm, inflicting conditions of life calculated to bringing about their physical destruction, and imposing measures to restrict births.[9] The Court also ordered Myanmar and all units under its direction, control, or influence to not commit genocide, conspiracy to commit genocide, incitement to genocide, attempt to commit genocide, or complicity in genocide.[10] Myanmar was also ordered to preserve all evidence relating to allegations of the crime of genocide, and to report back to the Court in four months

---

https://www.ushmm.org/information/press/press-releases/museum-finds-compelling-evidence-genocide-was-committed-against-rohingya-wa.

[7] DOCUMENTING ATROCITY CRIMES COMMITTED AGAINST THE ROHINGYA IN MYANMAR'S RAKHINE STATE: FACTUAL FINDINGS & LEGAL ANALYSIS at vii, PUBLIC INTERNATIONAL LAW AND POLICY GROUP (Dec. 2018), https://www.publicinternationallawandpolicygroup.org/s/PILPG-ROHINGYA-REPORT-Factual-Findings-and-Legal-Analysis-3-Dec-2018-1.pdf.

[8] *Treasury Sanctions Individuals for Roles in Atrocities and Other Abuses,* U.S. DEP'T OF THE TREASURY (Dec. 20, 2019), https://home.treasury.gov/news/press-releases/sm852.

[9] *Application of the Convention on the Prevention and Punishment of the Crime of Genocide (The Gambia v. Myanmar ), Order,* ¶ 86 (Jan. 23, 2020), https://www.icj-cij.org/files/case-related/178/178-20200123-ORD-01-00-EN.pdf.

[10] *Id.*

and then every six months thereafter on its compliance with the Order.[11] In issuing this Order, the ICJ underscored that the Rohingya "remain extremely vulnerable" to genocide, and that "there is a real and imminent risk of irreparable prejudice to the rights invoked by The Gambia."[12]

8. Proceedings before the ICJ generally consist of two phases: a written phase, during which the parties exchange written briefs and supporting documentary evidence; and a subsequent oral hearing, during which the parties may present witness testimony and oral argument. The Parties are currently in the midst of the written phase, which will extend at least until January 23, 2021. After the written phase concludes, the ICJ will schedule the oral hearing.

## II. THE RELEVANCE OF THE REQUESTED DISCOVERY

9. Statements on social media, including Facebook, made by officials and representatives of Myanmar hostile to the Rohingya, or encouraging violence against them, including but not limited to statements made by senior military officers directed at rank-and-file soldiers or armed civilians who carried out attacks against the Rohingya, may constitute evidence of genocidal intent necessary to support a finding of responsibility for genocide. Press reports have indicated that Myanmar state entities have engaged in certain practices, including coordinated inauthentic behavior, on Facebook to further its anti-Rohingya policies and propaganda.[13]

10. The Gambia is interested in all evidence indicating the involvement of Myanmar State officials and entities, or those affiliated with State officials and entities, in spreading anti-

---

[11] *Id.*

[12] *Id.* at ¶¶ 72, 75.

[13] *See, e.g.*, Steve Stecklow, *Hatebook*, REUTERS (Aug. 15, 2018), https://www.reuters.com/investigates/special-report/myanmar-facebook-hate/.

Rohingya hate speech and incitement to violence on Facebook.. Specifically, The Gambia's request for discovery is limited to the following narrow and discrete categories of electronic content and documents:

1. All documents and communications produced, drafted, posted, or published by the Facebook page of the Office of the Commander-in-Chief, Senior-General Ming Aung Hlaing;

2. All documents and communications produced, drafted, posted, or published by the Facebook account of Myanmar Senior-General Min Aung Hlaing;

3. All documents and communications produced, drafted, posted, or published by the Facebook accounts of the following individuals:

    i. Myanmar Vice Senior General Soe Win;

    ii. Myanmar Brigadier General Khin Maung Soe;

    iii. Myanmar Brigadier General Aung Aung;

    iv. Myanmar Brigadier General Than Oo;

    v. Myanmar General Than Oo;

    vi. Myanmar General Aung Kyaw Zaw;

    vii. Myanmar Major General Aung Myo Thu;

    viii. Myanmar Major General Maung Maung Soe;

    ix. Myanmar Brigadier General Thura San Lwin;

    x. Myanmar Major Thant Zaw Win;

    xi. Myanmar Officer Tun Naing;

    xii. Myanmar Border Guard Police Corporal Kyaw Chay;

    xiii. Myanmar Staff Sergeant Ba Kyaw;

      xiv. Myanmar 99th Light Infantry Division Leader Khin Hlaing;

      xv. Thant Zin Oo; and

      xvi. Phay Sit Gyi.

4. All documents and communications produced, drafted, posted, or published by the Facebook accounts of the following organizations:

      i. Myawady, the television network owned by the Myanmar military;

      ii. Myanmar 33rd Light Infantry Division; and

      iii. Myanmar 99th Light Infantry Division.

5. All documents and communications produced, drafted, posted, or published by any Facebook account belonging to the Myanmar Police Force;

6. All documents produced, drafted, posted, or published on the following pages: "Beauty and Classic," "Young Female Teachers," Collection of Soldier's Photos," "Lord of Heaven," "Down for Anything," "Let's Laugh Casually," "We Love Myanmar," "Knowledge," and "All About Myanmar."

7. All documents and communications produced, drafted, posted, or published by the 20 military individuals and organizations that Facebook banned in August 2018;

8. All documents and communications produced, drafted, or published by any other **account** belonging to or controlled by a Myanmar state official, representative, or entity whose account was suspended or terminated by Facebook from 2012 to the present for concerns relating to human rights or the dissemination of hate speech;

9. All documents and communications produced, drafted, or published by any other Facebook **page** belonging to or controlled by Myanmar state officials,

representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities that was suspended or terminated by Facebook from 2012 to the present for "coordinated inauthentic behavior" in violation of Facebook's misrepresentation policy;

10. All documents and communications produced, drafted, or published by any other Facebook **group** belonging to or controlled by Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities that was suspended or terminated by Facebook from 2012 to the present for "coordinated inauthentic behavior" in violation of Facebook's misrepresentation policy;

11. All documents and communications produced, drafted, or published by any other Facebook **account** belonging to or controlled by Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities that was suspended or terminated by Facebook from 2012 to the present for "coordinated inauthentic behavior" in violation of Facebook's misrepresentation policy;

12. All documents and communications produced, drafted, or published by any other **Instagram account** belonging to or controlled by Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities that was suspended or terminated by Facebook from 2012 to the present for "coordinated inauthentic behavior" in violation of Facebook's misrepresentation policy;

13. All documents relating to any internal investigations conducted by Facebook of "coordinated inauthentic behavior," or other terms of service violations, from 2012 to the present, committed by accounts belonging to or controlled by Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities.

14. A deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure regarding the subject-matters described above

11. As counsel to The Gambia, I am prepared to work in good faith with counsel for Facebook to facilitate its production of the requested documents and deposition testimony, and to minimize any burden imposed on Facebook.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of June 2020, in Washington, D.C.

/s/ Timothy P. O'Toole
Timothy P. O'Toole