# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* Application Pursuant to 28 U.S.C. § 1782 of<br><br>THE REPUBLIC OF THE GAMBIA,<br><br>       Petitioner,<br><br>   v.<br><br>FACEBOOK, INC.<br><br>       Respondent. | Case: 1:20-mc-00036-JEB-DAR |

**FACEBOOK'S OPPOSITION TO PETITIONER'S APPLICATION PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 4

ARGUMENT.......................................................................................................................... 6

    I.    The Application asks the Court to issue a subpoena in violation of federal law................................................................................................................. 6

    II.    The Applicant has not satisfied the legal or prudential requirements for obtaining discovery under Section 1782................................................................ 10

CONCLUSION..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
   2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ...................................................................6

*In Matter of Application of Leret*,
   51 F. Supp. 3d 66 (D.D.C. 2014) ....................................................................................5

*In re Ex Parte Application of Nokia Corp.*,
   2013 WL 6073457 (N.D. Cal. Nov 8, 2013) ...............................................................5, 12

*In re Ex Parte Application of Qualcomm, Inc.*,
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..........................................................................10

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
   2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ...............................................................10

*Bayer AG v. Betachem, Inc.*,
   173 F.3d 188 (3d Cir. 1999) ...........................................................................................12

*In re Cathode Ray Tube Antitrust Litig.*,
   2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .................................................................5, 12

*In re Facebook, Inc.*,
   923 F. Supp. 2d 1204 (N.D. Cal. 2012) ..........................................................................6

*Facebook, Inc. v. Wint*,
   199 A.3d 625 (D.C. 2019) ...............................................................................................7

*Intel Corp. v. Adv. Micro Devices, Inc.*,
   542 U.S. 241 (2004) .....................................................................................................5, 12

*In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*,
   16 F.3d 1016 (9th Cir. 1994) .........................................................................................12

*Medeiros v. Int'l Game Tech.*,
   2016 WL 1611591 (D. Nev. Apr. 22, 2016) ..................................................................10

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
   2018 WL 368766 (N.D. Cal. Jan. 11, 2018) ..................................................................10

*In re Microsoft Corp.*,
   2006 WL 825250 (N.D.Cal. Mar. 29, 2006) ..................................................................13

*Rainsy v. Facebook, Inc.*,
    311 F. Supp. 3d 1101 (N.D. Cal. 2018) ................................................................. 5, 7, 8, 11

*In re Rubber Chemicals Antitrust Litig.*,
    486 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 13

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011) ............................................................................................ 7

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ......................................................................................... 7

*United States v. Nix*,
    251 F. Supp. 3d 555 (W.D.N.Y. 2017) ............................................................................. 7

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ......................................................................................... 9

**Statutes**

18 U.S.C. § 2510 ............................................................................................................... 7, 8

18 U.S.C. § 2702 ................................................................................................... 1, 2, 6, 9, 12

18 U.S.C. § 2703 ..................................................................................................................... 8

18 U.S.C. § 3512 ................................................................................................................ 9, 12

28 U.S.C. § 1782 ............................................................................................................ *passim*

**Other Authorities**

Application of the Convention on the Prevention and Punishment of the Crime of
    Genocide (The Gambia v. Myanmar), Order, 2020 I.C.J. No. 178 .............................. 3, 4

Convention on the Prevention and Punishment of the Crime of Genocide,
    78 U.N.T.S. 277 ............................................................................................................ 2, 3

United Nations Convention Against Transnational Organized Crime,
    2225 U.N.T.S. 209 ............................................................................................................ 1

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................. 10

# INTRODUCTION

Respondent Facebook, Inc. respectfully opposes the application of The Republic of The Gambia ("The Gambia") pursuant to 28 U.S.C. § 1782. Facebook appreciates the gravity of the issues that The Gambia has brought before the International Court of Justice ("ICJ"), and has announced its willingness to assist accountability efforts regarding Myanmar. But Facebook's ability to provide the information identified in The Gambia's application is circumscribed by U.S. law. Specifically, this Section 1782 application seeks to force Facebook to violate the Stored Communications Act, 18 U.S.C. § 2702(a), a provision of the federal criminal code that protects billions of global internet users from violations of their right to privacy and freedom of expression. Absent a statutory exception, the SCA strictly prohibits Facebook from disclosing the contents of communications on its platform in response to a civil subpoena like the one proposed here. Thus, granting The Gambia's application would result in a subpoena with which Facebook could not lawfully comply. For that reason, and because the application fails to satisfy other legal requirements for obtaining discovery under Section 1782, this Court should deny the application.

Foreign governments have well-established ways of obtaining the type of content information at issue here, namely through mutual legal assistance treaties ("MLATs"). International conventions and treaties also permit for mutual legal assistance. *See, e.g.*, The Palermo Convention on Transnational Organized Crime, United Nations Convention Against Transnational Organized Crime, Art. 18, 2225 U.N.T.S. 209 (which The Gambia and the United States have ratified). In addition, the SCA itself permits Facebook to disclose the contents of its users' communications "to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified

1

to Congress satisfies [18 U.S.C. § 2523]." 18 U.S.C. § 2702(b)(9). That provision, which Congress enacted as part of the Clarifying Lawful Overseas Use of Data Act ("CLOUD Act") in 2018, was designed to balance a foreign government's legitimate need for certain communications data held by U.S. companies against the rights of the companies' account holders. The SCA also contains an exception that would permit Facebook to provide The Gambia with *non*-content information about users' communications. 18 U.S.C. § 2702(c)(7).

The Gambia, however, has not utilized any of these lawful mechanisms, choosing instead to file a Section 1782 application that violates U.S. law. This Court should deny the application.

## BACKGROUND

In October 2019, The Gambia brought an action against the Republic of Myanmar in the ICJ under the 1948 Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention"). Appl. at 6. The Genocide Convention, to which both The Gambia and Myanmar are parties, grants the ICJ jurisdiction over "[d]isputes between the Contracting Parties ... relating to the responsibility of a State for genocide." Convention on the Prevention and Punishment of the Crime of Genocide, Art. IX, 78 U.N.T.S. 277. The Gambia and Myanmar are the only parties to the ICJ proceeding, *see* Appl. at 6, and the ICJ has no jurisdiction over crimes committed by individuals.

The Gambia alleges in the ICJ proceeding that Myanmar is responsible for acts of genocide committed against the Rohingya people, an ethnic and religious minority in Myanmar, and seeks an order directing Myanmar to cease further genocidal acts against the Rohingya. *Id*. at 1. To prevail, The Gambia must prove that Myanmar committed an act enumerated in Article II of the Genocide Convention, including "killing, causing serious bodily and mental harm, inflicting conditions that are calculated to bring about physical destruction, and imposing

measures to prevent births—with the intent to destroy the Rohingya, in whole or in part." *Id*. at 6.

The Gambia has already achieved this objective on a provisional basis. On January 23, 2020, after oral hearings, the ICJ ruled unanimously (17-0) to grant The Gambia's request for a provisional order that directs Myanmar "to take all measures within its power to prevent the commission of all acts of genocide against the Rohingya[.]" *Id*. at 7. The ICJ found there was a "real and imminent risk of irreparable prejudice to the rights invoked by The Gambia" related to Myanmar's treatment of the Rohingya, as necessary to justify ordering provisional measures against Myanmar. *See* Appl. at 7; *see also* Application of the Convention on the Prevention and Punishment of the Crime of Genocide (The Gambia v. Myanmar), Order, 2020 I.C.J. No. 178, ¶¶ 71–76 (Jan. 23) ("ICJ Order"). The ICJ further ordered Myanmar to preserve all evidence relating to these allegations of genocide. Appl. at 7.

The ICJ proceeding has now progressed to a written phase that will consider further evidence. To that end, The Gambia now seeks to obtain discovery from Facebook about the accounts of numerous and unspecified Myanmar officials, individuals, and their affiliates (or suspected affiliates). While its application claims to seek "limited discovery," its requests are extraordinarily broad and well beyond the scope of what is permitted by law. For example, the requests seek "*[a]ll* documents and communications produced, drafted, posted, or published by" numerous inadequately identified or wholly unidentified Facebook and Instagram users, groups, or pages affiliated (or *suspected* of being affiliated) with Myanmar government and military officials, as well as accounts, groups, and pages "suspected of acting" in coordination with these accounts—including the private messages and other communications of any number of unknown people. *See* Appl. at 15–16 (emphasis added). These requests do not limit the topic or subject

3

matter of the requested documents or communications, nor are they limited by any particular geography.  *Id.*  The requests seek this information on an unspecified number of Facebook and Instagram accounts, either without any time limit, or for a period that extends several years prior to the events that are the subject of The Gambia's case at the ICJ.  *See* ICJ Order at 7 ("Specifically, The Gambia asserts that in October 2016 the Myanmar military and other Myanmar security forces began widespread and systematic 'clearance operations' against the Rohingya group[.]").  The requests also do not identify any accounts with sufficient specificity for Facebook to determine which accounts are within the scope of the request.

The application further requests Facebook's internal policy and procedure documents, including *all* documents related to "any internal investigations conducted by Facebook" regarding coordinated inauthentic behavior or any "other terms of service violations, from 2012 to the present" by "accounts belonging to or controlled by Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities."  Appl. at 17.  In addition to these broad document requests, The Gambia also seeks to compel Facebook to put forward a Rule 30(b)(6) deponent to testify as a corporate representative on all of these wide-ranging topics related to the document requests, including investigations into potentially hundreds or thousands of Myanmar-affiliated accounts that were suspected of any terms of service violations over roughly the last decade.  *Id.*

## LEGAL STANDARD

An applicant seeking discovery pursuant to 28 U.S.C. § 1782 must satisfy three statutory requirements: (1) the person from whom discovery is sought must "reside[]" or be "found" in the district; (2) the discovery must be for use in a "proceeding in a foreign or international tribunal"; and (3) the applicant must be an "interested person."  28 U.S.C. § 1782.  If these requirements are met, "[t]he statute authorizes, but does not require," the district court to compel the requested

4

discovery. *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). "A district court need not grant § 1782(a) discovery 'simply because it has the authority to do so,'" *In Matter of Application of Leret*, 51 F. Supp. 3d 66, 69 (D.D.C. 2014) (quoting *Intel Corp.*, 542 U.S. at 264), and it may not grant a Section 1782 application that conflicts with U.S. law, *see Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114 (N.D. Cal. 2018).

When considering a Section 1782 application, courts also must weigh several prudential factors, known as the *Intel* factors, including (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the request is an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264–66.

Requests that are found to be "unduly intrusive or burdensome ... may be rejected." *Id*. at 265. The applicant bears the "burden to come to the court with [a] narrowly-tailored request in the first instance," and failure to do so is grounds for denying an application outright. *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013); *In re Cathode Ray Tube Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2013).

**ARGUMENT**

Facebook is committed to working with and providing information to the relevant authorities as they investigate international crimes in Myanmar, as it has publicly stated. But an application under Section 1782 is not the proper means for The Gambia to pursue the discovery it seeks from Facebook. This Court should deny the application for the reasons set forth below.[1]

**I.      The Application asks the Court to issue a subpoena in violation of federal law.**

The application does not comply with federal law. In particular, the Stored Communications Act ("SCA") prohibits Facebook from disclosing the content of the communications of its account holders in response to a civil subpoena like this, absent a statutory exception, even where those account holders are foreign governments and high-ranking foreign officials accused of genocide.

The SCA promotes the privacy of electronic communications by strictly limiting the circumstances under which providers may divulge them. It mandates that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).[2] Because Facebook (and Instagram) are providers of an "electronic communication service," *see In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012),

---

[1] This opposition brief addresses the grounds for denying the application outright. If the application is granted, Facebook reserves the right to challenge each request in a motion to quash. *See In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016) (decision to grant Section 1782 application "does not preclude [the respondent] from bringing a motion to quash or modify the subpoena[]" on grounds of "intrusiveness, relevance, breadth, or burdensomeness").

[2] The law was enacted in response to Congress's concern that if governments or members of the public could obtain people's private information from service providers—who maintain such records as part of their role in transmitting and storing data—then people would not trust the privacy of electronic communications, providers would become inundated with third-party requests, and innovations in communications technology would cease.

6

Facebook is prohibited from being compelled to divulge the contents of their users' communications, including "any information concerning the[ir] substance, purport, or meaning." 18 U.S.C. § 2510(8); *see also Rainsy*, 311 F. Supp. 3d at 1114 (Facebook "is a provider of electronic communication services and … cannot divulge the 'contents' of its users' communications"); *United States v. Nix*, 251 F. Supp. 3d 555, 559 (W.D.N.Y. 2017) (The SCA "does not permit a defendant in a criminal case to subpoena the content of a Facebook or Instagram account").

The SCA's prohibition on disclosure contains no exception for civil (or even criminal) subpoenas, regardless of whether the subpoena is served under Rule 45 or under Section 1782. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011); *see also Rainsy*, 311 F. Supp. 3d at 1114 (denying Section 1782 application after holding "[t]here is no exception [in the SCA] for civil subpoenas," and collecting similar cases); *Facebook, Inc. v. Wint*, 199 A.3d 625, 629 (D.C. 2019) (collecting cases and finding "every court to consider the issue has concluded the SCA's general prohibition on disclosure of the contents of the covered communications applies to" subpoenas).  Rather, the SCA affirmatively "limits § 1782 by making it illegal for an entity that provides an electronic communication service to the public to produce the contents of its stored communications." *Suzlon*, 671 F.3d at 728.  There also is no exception where the subpoena seeks the protected documents of foreign citizens. *Id*. at 729 ("Any person means any person, including foreign citizens.").  A subpoena seeking such information is "invalid." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072–74 (9th Cir. 2004).

All of the document requests and deposition topics in the subpoena sought by the application here, by their plain terms, seek disclosure of the contents of Facebook users' communications, including the private messages and other communications of any number of

7

unknown, unidentified people. Specifically, the applicant seeks all "documents and communications produced, drafted, posted, or published" by numerous Facebook groups, pages, or accounts belonging to a litany of individuals or entities, none of whom are specifically identified. O'Toole Decl., Ex. 1, Schedule A (RFP Nos. 1–12). A subpoena purporting to compel the disclosure of such materials is expressly prohibited by the SCA. *See, e.g.*, *Rainsy*, 311 F. Supp. 3d at 1114. Indeed, if the U.S. government wished to obtain such information from Facebook, it would be required to comply with a host of stringent requirements set forth in the SCA and obtain a warrant supported by probable cause. *See* 18 U.S.C. § 2703. It would make little sense for the SCA to allow a foreign government to obtain the same information without meeting any of those same (or comparably stringent) requirements.

Even the application's final demand, which seeks "documents relating to any internal investigations conducted by Facebook of 'coordinated inauthentic behavior,'" O'Toole Decl., Ex. 1, Schedule A. (RFP No. 13), or other "terms of service violations" for various, unidentified accounts, would require Facebook to respond in a manner that would inevitably reveal "information concerning the substance, purport, or meaning" of these users' communications, as forbidden by the SCA. *See* 18 U.S.C. § 2510(8). This final request recognizes that such documents will be responsive only if they pertain to investigations into *specific* content of "accounts belonging to or controlled by the Myanmar state officials, representatives, entities or groups acting in coordination, or suspected of acting in coordination, with Myanmar state entities," and thus by definition would reveal how those users' communications pertain to restrictions imposed on user content by Facebook. However this request is styled, disclosing that a specific user sent, posted, or published content about a specific topic that Facebook determined might violate its terms of service is prohibited by the SCA, as it would "divulge ... the contents

of"—that is, the "intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

By its application, The Gambia asks this Court to grant it special and unbounded access to account information that no other governmental entity in the world—not even the United States—has available to it in any other proceeding.[3] Indeed, the legal frameworks in place for disclosing certain content information in response to a request pursuant either to the international assistance processes established by U.S. law (e.g., MLAT), 18 U.S.C. § 3512, or the CLOUD Act's exception to the SCA for foreign governments, 18 U.S.C. § 2702(b)(9), (c)(7), further demonstrate the inappropriateness of the Section 1782 application here. The international assistance process permits foreign governments to seek the assistance of the U.S. government, pursuant to a letter rogatory (or a mutual legal assistance treaty, if one existed). The U.S. government could then utilize 18 U.S.C. § 3512 to seek to obtain a search warrant from a U.S. court requiring the disclosure of content information to the U.S. government consistent with the SCA, which the U.S. government would then review and disclose to the foreign government. The CLOUD Act exception permits the disclosure of content information directly to a foreign government "pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress." 18 U.S.C. § 2702(b)(9). Congress's decision to create the CLOUD Act and codify international assistance

---

[3] Facebook regularly cooperates with U.S. and foreign government requests for data that comply with relevant legal requirements, including those set forth in the SCA. As explained in Facebook's Transparency Report, "[e]ach and every request we receive is carefully reviewed for legal sufficiency and we may reject or require greater specificity on requests that appear overly broad or vague." *See Government Requests for User Data*, Facebook, https://transparency.facebook.com/government-data-requests (data showing Facebook received 140,875 government requests for data between July and December 2019, and produced some data in response to 74.4% of the requests).

9

procedures (e.g., MLAT) reflects its determination of the proper balance between the competing interests at issue in this litigation and thus constitutes the legislatively mandated processes by which foreign governments can seek to obtain content information from providers.  Facebook could comply with a proper request pursuant to the CLOUD Act or the international assistance process.[4]

## II.  The Applicant has not satisfied the legal or prudential requirements for obtaining discovery under Section 1782.

This Court also should deny the application because the requests are overbroad and disproportionate to the potential relevance and utility of any resulting information.

In considering whether to grant a Section 1782 application, courts must weigh whether the discovery requested is "'proportional' considering 'the issues at stake in the [foreign proceeding] … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) (quoting Fed. R. Civ. P. 26(b)(1)).[5] Requests are overbroad "where they are not narrowly tailored." *Id.* (quoting *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016)).

---

[4]  Yet another legal framework for the disclosure of content information would be a formal request for discovery pursuant to the mutual legal assistance provisions codified in international treaties, such as the Palermo Convention on Transnational Organized Crime, International Convention for the Suppression of the Financing of Terrorism, United Nations Convention Against Corruption, UN-CTOC and Convention Against Torture, to which The Gambia and the United States are both signatories.

[5]  "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure," *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016), regardless of whether the foreign proceeding is civil or criminal, *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591, at *3 & n.2 (D. Nev. Apr. 22, 2016).

The document requests here would sweep in potentially thousands of Myanmar-affiliated accounts, pages, and groups and their related content dating back a decade or more. For example, Request No. 13 seeks "all documents relating to any internal investigation … from 2012 to the present, committed by accounts … acting in coordination, or suspected of acting in coordination, with Myanmar state entities," O'Toole Decl., Ex. 1, Schedule A (RFP No. 13), even though such a request may reach an untold number of accounts dating back nearly a decade, including four years prior to the events described in the application, Appl. at 3, and involve activity wholly unrelated to the atrocities at issue. Additionally, the phrase "suspected of acting" offers no meaningful way to limit the scope, as it is open-ended as to which accounts were "suspected" of having an affiliation with the Myanmar government, or how to make that determination.

Moreover, the application's request for information about Facebook's *internal* policies and procedures is not relevant to the claims being pursued in the ICJ about the actions of the Myanmar government. O'Toole Decl., Ex. 1, Schedule A (RFP No. 13) (requesting "[a]ll documents relating to any internal investigations conducted by Facebook of 'coordinated inauthentic behavior,' or other terms of service violations, from 2012 to the present"). There is no indication whatsoever as to how such materials would be useful or useable in the ICJ proceedings, as the outcome of those proceedings will turn on factual findings made *by the ICJ*, not hearsay documents discussing internal findings made by Facebook. *See, e.g.*, *Rainsy*, 311 F. Supp. 3d at 1111 (denying Section 1782 request for information related to "Facebook's historical processes for preventing false or deceptive news and threatening or harassing statements" where it bore no relation to the foreign action).

11

The application's request for a Rule 30(b)(6) deposition is particularly problematic and overbroad.  The proposed topics have no meaningful limitation and include all "the subject-matters described [in the document requests]."  Appl. at 17.  Nor does the application attempt to explain how such a deposition would be meaningfully additive or relevant beyond the topics and information covered by the document requests themselves, or the information already available to the ICJ.  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191–92 (3d Cir. 1999) (affirming district court's denial of Section 1782 petition where additional redacted information sought from documents would be "cumulative").

The plain overbreadth of the applicant's requests makes it appropriate to deny the application outright.  *Nokia*, 2013 WL 6073457, at *3 ("Because [the applicant's] subpoena application is not narrowly tailored, and appears highly intrusive as well as unduly burdensome, this factor weighs strongly against" granting the application); *see Cathode Ray Tube*, 2013 WL 183944, at *4 (there is no need to "trim" overbroad requests; they "may be rejected" (quoting *Intel Corp.*, 542 U.S. at 265)).

Finally, the application raises serious foreign policy and international comity concerns.  *Cathode Ray Tube*, 2013 WL 183944, at *3 ("[F]actors like comity among nations and parity among parties can be touchstones in this analysis.").  The applicant's requests seek access to the personal communications of senior Myanmar officials and their connections with various other individuals, entities, or groups, without following established policies for a foreign government to seek such information from entities like Facebook.  *See* 18 U.S.C. § 2702(b)(9); 18 U.S.C. § 3512; *see also In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1021 (9th Cir. 1994); *Cathode Ray Tube*, 2013 WL 183944, at *3 (quashing Section 1782

12

requests based in part on comity concerns); *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1084 (N.D. Cal. 2007) (same); *In re Microsoft Corp.*, 2006 WL 825250, at *3 (same).

## CONCLUSION

The Gambia's application does not comply with the requirements of U.S. law and this Court should deny it.


Dated:  August 4, 2020

Respectfully submitted,

 */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz (D.C. Bar No. 1033391)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8217
Facsimile:  (202) 530-9614
jlipshutz@gibsondunn.com

*Counsel for Respondent Facebook, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for any party indicated as non-registered participants on this 4th day of August 2020.

　　　　　　　　　　　　　　　　　　　　　　 */s/ Joshua S. Lipshutz*
　　　　　　　　　　　　　　　　　　　　　　　Joshua S. Lipshutz (D.C. Bar No. 1033391)