# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

*In re* Application Pursuant to 28 U.S.C. § 1782 of

THE REPUBLIC OF THE GAMBIA,

       Petitioner,

  v.

FACEBOOK, INC.

       Respondent.

Case: 1:20-mc-00036-JEB-DAR

## FACEBOOK'S SURREPLY IN FURTHER OPPOSITION
## TO PETITIONER'S APPLICATION PURSUANT TO 28 U.S.C. § 1782

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | The SCA Prohibits Facebook From Complying With the Proposed Subpoena. | 2 |
| II. | The Gambia's Interpretation of the SCA Is Contrary to Settled Law | 4 |
| III. | Petitioner's Requests Do Not Fall Within the SCA's Exceptions. | 7 |
| CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Ex Parte Application of Nokia Corp.*,
  2013 WL 6073457 (N.D. Cal. Nov. 8, 2013) ...................................................................8

*Bower v. Bower*,
  808 F. Supp. 2d 348 (D. Mass. 2011) .............................................................................6

*Crispin v. Christian Audigier, Inc.*
  717 F. Supp. 2d 965 (C.D. Cal. 2010) .........................................................................2, 3

*Delaware Dep't of Nat. Res. & Envtl. Control v. EPA*,
  895 F.3d 90 (D.C. Cir. 2018) ..........................................................................................3

*Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*,
  961 F. Supp. 2d 659 (D.N.J. 2013) .................................................................................2

*In re Facebook, Inc.*,
  923 F. Supp. 2d 1204 (N.D. Cal. 2012) ..................................................................2, 5, 9

*Facebook, Inc. v. Super. Ct. of the City and Cty. of S.F.*,
  4 Cal. 5th 1245 (Cal. 2018) ............................................................................................7

*In re Grand Jury Subpoena No. 7409*,
  2019 WL 2168874 (D.D.C. Jan. 24, 2019) .....................................................................9

*Hately v. Watts*,
  917 F.3d 770 (4th Cir. 2019) ..........................................................................................3

*In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*,
  559 B.R. 627 (Bankr. D. Del. 2016) ...............................................................................5

*Kardas v. Astas Holdings A.S.*,
  2019 WL 3365636 (N.D. Cal. July 25, 2019) .................................................................4

*Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*,
  2013 WL 256771 (N.D. Cal. Jan. 23, 2013) ...................................................................4

*PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*,
  273 F. Supp. 3d 558 (W.D. Pa. 2017) .............................................................................9

*Rainsy v. Facebook, Inc.*,
  311 F. Supp. 3d 1101 (N.D. Cal. 2018) ......................................................................5, 8

*Schweickert v. Hunts Point Ventures, Inc.*,
 2014 WL 6886630 (W.D. Wash. Dec. 4, 2014) ........................................................................9

*Suzlon Energy Ltd. v. Microsoft Corp.*,
 671 F.3d 726 (9th Cir. 2011) .............................................................................................5, 6

*In re Toft*,
 453 B.R. 186 (Bankr. S.D.N.Y. 2011) ...................................................................................5

*United States v. Martin*,
 2015 WL 4463934 (D. Ariz. 2015) ........................................................................................3

*United States v. Wenk*,
 319 F. Supp. 3d 828 (E.D. Va. 2017) ....................................................................................9

*Xie v. Lai*,
 2019 WL 7020340 (N.D. Cal. Dec. 20, 2019) .......................................................................4

**Statutes**

18 U.S.C. § 2510(17)(B) ....................................................................................................................3

18 U.S.C. § 2702(a)(1) ..............................................................................................................1, 2, 3

18 U.S.C. § 2702(b)(5) ............................................................................................................7, 8, 9

18 U.S.C. § 2702(b)(9) ....................................................................................................................3

18 U.S.C. § 2703(a) .........................................................................................................................7

**Other Authorities**

Facebook Newsroom, *An Independent Assessment of the Human Rights Impact of
 Facebook in Myanmar* (Aug. 26, 2020 update) ....................................................................2

H.R. Rep. No. 99-647 ......................................................................................................................4

**Treatises**

Black's Law Dictionary (11th ed. 2019)..........................................................................................3

**INTRODUCTION**

The Gambia's application pursuant to Section 1782 asks this Court to issue a subpoena with which Facebook could not lawfully comply. As Facebook explained in its opposition brief, the Stored Communications Act ("SCA"), 18 U.S.C § 2702(a), prohibits Facebook from disclosing the contents of its users' communications—however abhorrent they may be—in response to The Gambia's proposed subpoena.

In its reply brief, The Gambia interprets the SCA in a manner that contradicts both the plain text of the statute and decades of judicial precedent. Facebook submits this short surreply brief to explain why The Gambia's arguments are incorrect and, importantly, why they would set a dangerous precedent undermining the legal framework that promotes and protects the privacy interests of billions of internet users worldwide. Facebook receives thousands of requests every year from foreign governments around the world seeking users' communications, and Facebook relies on the settled legal framework established by the SCA for responding to those requests. Under The Gambia's approach, foreign governments could obtain Facebook information about users around the world without any legal process at all. That is not the law.

Although this Section 1782 proceeding is not the proper means of obtaining information pertaining to the genocide in Myanmar, Facebook is actively working to support the United Nations Independent Investigative Mechanism for Myanmar ("IIMM") in a manner that is consistent with United States law, including the SCA. The IIMM is a uniquely positioned body that is tasked with collecting, preserving, and analyzing information for use in criminal proceedings under international law and in other contexts on a case-by-case basis, and with expediting and facilitating fair criminal proceedings. Facebook has been and continues to be in dialogue with the IIMM on these issues for months, has preserved information at its request, and earlier this week, began voluntarily producing to the IIMM information that Facebook is permitted

1

to produce under the SCA. *See, e.g.*, *An Independent Assessment of the Human Rights Impact of Facebook in Myanmar*, Facebook Newsroom (Updated Aug. 26, 2020), https://about.fb.com/news/2018/11/myanmar-hria/. The Gambia also can ask the IIMM to share any materials in order to prosecute its case. But the SCA requires that Petitioner's overly broad and sweeping subpoena application be denied.

**ARGUMENT**

**I.      The SCA Prohibits Facebook From Complying With the Proposed Subpoena.**

The statutory prohibition on Facebook's disclosure of communications content is straightforward: subject to certain enumerated exceptions (none of which are applicable here), "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). This prohibition plainly applies here.

First, as every court has held and as Petitioner does not dispute, Facebook is a "person or entity providing an electronic communication service to the public." *Ehling v. Monmouth-Ocean Hosp. Serv. Corp.*, 961 F. Supp. 2d 659, 667 (D.N.J. 2013) (holding "Facebook is an electronic communication service ["ECS"] provider" under SCA); *see also In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (same); *Crispin v. Christian Audigier, Inc.* 717 F. Supp. 2d 965, 982 (C.D. Cal. 2010) (holding subpoenas seeking content from Facebook invalid under SCA because "Facebook . . . is an ECS provider").[1]

Second, Petitioner's application seeks to compel Facebook to "knowingly divulge" certain information to "any person or entity"—*viz.*, The Gambia. 18 U.S.C. § 2702(a)(1). Although the

---

[1] Facebook is also a "remote computing service" under 18 U.S.C. § 2702(a)(2). *In re Facebook,* 923 F. Supp. 2d at 1206 n.7 (quashing subpoena seeking disclosure of content of deceased

2

term "entity" is not defined in the SCA, its ordinary legal definition includes "a governmental unit[] that has a legal identity apart from its members or owners." *See* Dkt. 10 ("Reply") at 6 (quoting Black's Law Dictionary (11th ed. 2019)). In fact, Congress made clear that foreign governments are included within the collection of entities to whom disclosure is prohibited when it created an exception that allows disclosure to foreign governments under certain conditions. *See* 18 U.S.C. § 2702(b)(9) (allowing disclosure "to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies section 2523"); *Delaware Dep't of Nat. Res. & Envtl. Control v. EPA*, 895 F.3d 90, 99 (D.C. Cir. 2018) (courts must "construe statutes so that effect is given to all its provisions"). The Gambia concedes it has not met the requirements for disclosure to foreign governments under that exception. Reply at 18–19.

Third, The Gambia's subpoena on its face seeks the contents of communications. *See* Dkt. 8 (Opposition) at 7–10. The Gambia does not argue otherwise.

Fourth, the communications being sought are "in electronic storage by [Facebook]." 18 U.S.C. § 2702(a)(1). The SCA provides that "electronic storage" includes "*any* storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(B) (emphasis added). It is well-established that Congress intended "electronic storage" in the SCA to be construed "broadly, stating that it did not intend to limit the term to particular mediums, forms, or locations." *Hately v. Watts*, 917 F.3d 770, 786 (4th Cir. 2019) (citing H.R. Rep. No. 99-647, at 39). Rather, a communication is held in "electronic

---

Facebook user based on the SCA); *Crispin*, 717 F. Supp. 2d at 989–90 (holding Facebook is both an ECS and RCS under the SCA); *United States v. Martin*, 2015 WL 4463934, at *4 (D. Ariz. 2015) (holding Facebook is both an ECS and RCS). This brief focuses on the requirements of Section 2702(a)(1) solely for simplicity. Facebook reserves its right to argue that the requirements of Section 2702(a)(2) are met as well, if necessary.

3

storage" whenever it is "reserved for future use" of any kind or "record[ed] in an electronic device (as a computer from which the data can be obtained as needed)." *Id.* (collecting cases and quoting Webster's Third New International Dictionary 2252). By Petitioner's own admission, Facebook is currently preserving the communications it seeks for "purposes of backup protection"—i.e., to ensure their "preserv[ation]" for a future use. *See* Reply at 4 ("The Gambia's requests are limited to information that Facebook has removed from its platform *and preserved*…."), 12 (recognizing "Facebook is … [acting as] a preserver of information.").

**II.     The Gambia's Interpretation of the SCA Is Contrary to Settled Law.**

The Gambia asserts an array of novel and erroneous arguments to avoid the SCA's prohibition. But the plain text of the statute and decades of judicial precedent refute them. Indeed, The Gambia cites very little case law interpreting the SCA, relying instead on generic principles of statutory interpretation, even though this is not an issue of first impression. Rather, there is a consistent body of case law going the other way. Moreover, all of The Gambia's arguments would erode privacy protections for billions of internet users, based either on the nationality of the user or the party seeking disclosure, or on unrelated decisions by the ECS provider. The Court should reject these unsupported arguments.

The Gambia argues, for example, that the SCA doesn't apply when the applicant is foreign. Reply at 4–9. But the plain text of the statute is to the contrary, as explained above with respect to foreign governments, and countless courts have rejected The Gambia's assertion. *See, e.g.*, *Kardas v. Astas Holdings A.S.*, 2019 WL 3365636, at *3 (N.D. Cal. July 25, 2019) (denying portion of Section 1782 application to disclose content of communication to Turkish government entity based on SCA); *Xie v. Lai*, 2019 WL 7020340, at *5 (N.D. Cal. Dec. 20, 2019) (SCA prohibited disclosure of content of communications to Canadian individuals and entities); *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, 2013 WL 256771, at *1 (N.D. Cal. Jan. 23,

4

2013) (SCA prohibited disclosure of content of communication to Australian entity); *In re Facebook*, 923 F. Supp. 2d at 1206 (holding SCA barred Facebook's disclosure of foreign user's communications to foreign applicants); *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101 (N.D. Cal. 2018) (SCA barred disclosure to Cambodian politician living in France); *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 648 (Bankr. D. Del. 2016) (SCA barred disclosure to foreign representative); *In re Toft*, 453 B.R. 186, 191 (Bankr. S.D.N.Y. 2011) (same). Indeed, Petitioner's interpretation would mean that foreigners and foreign governments—including governments that routinely violate human rights—could access the private communications of U.S. internet users even where such information would be unavailable to U.S. citizens and the U.S. government. That cannot be right.

The Gambia also argues that the particular communications it seeks are unprotected by the SCA because they are communications *by* foreign government officials and other foreigners. Reply at 4–9. But under the plain language of the SCA's prohibition, the identity of the speaker is irrelevant—the statute, by its plain terms, prohibits disclosure of "the contents of a communication" without any limitation on whose communication it is. Every court to have considered the issue has agreed that the SCA protects the communications of foreigners, including foreign government officials. *See, e.g.*, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 729 (9th Cir. 2011) ("Any person means any person, including foreign citizens."); *Rainsy*, 311 F. Supp. 3d at 1115 (holding SCA prohibited Section 1782 application for communications of Cambodian Prime Minister); *Bower v. Bower*, 808 F. Supp. 2d 348, 349 (D. Mass. 2011) (holding SCA prohibited disclosure of emails of individual living in Egypt); *In re Toft*, 453 B.R. at 198 (holding SCA offers a "comprehensive scheme of statutory protection, available to aliens"). As the Ninth Circuit explained, Sections "2702(b) and (c) list numerous exceptions to the rule as set forth in

§ 2702(a) …. [b]ut neither § 2702(b) nor (c) list citizenship as an exception." *Suzlon*, 671 F.3d at 729. Because "the plain language of the [SCA] extends its protections to non-citizens[, t]he Court is therefore obligated to enforce the statute as written." *Id*. Petitioner cites no case holding otherwise.

The Gambia argues that the SCA should not be given extraterritorial effect. Reply at 7. But that argument misses the point. The question in this case is whether Facebook (a U.S. entity) is prohibited from disclosing the contents of communications being held in electronic storage in the United States in response to a subpoena issued by a United States court. That is not an extraterritorial application of the statute. *See, e.g., Suzlon*, 671 F.3d at 729.

The Gambia argues that the "Myanmar government, its officials, and its agents are not 'users' under the SCA"—either because Facebook has taken down their accounts or because somehow they were not "duly authorized" to use Facebook in a manner that violates Facebook's policies. Reply at 4–11. But Section 2702, which codifies the SCA's disclosure prohibition and exceptions, does not even *mention* the term "users." Moreover, it would set a dangerous precedent that erodes privacy protections if communications content automatically became unprotected any time a service provider determined that the content violated its policies or removed the violating account. Terms of service violations do not permit the U.S. government to simply subpoena content, thereby bypassing the warrant requirement of the SCA, much less a foreign government. In any event, Petitioner does not limit its requests to users who have been removed from Facebook *or* to communications that violated Facebook's terms of use. *See, e.g.,* RFPs 1–11 (seeking "*all* documents and communications produced, drafted, [posted], or published" by a wide array of Myanmar accounts, some private or public, banned or active, suspected or established as belonging or affiliated to Myanmar officials).

6

Finally, The Gambia argues that communications are no longer in "electronic storage" when Facebook has deactivated the user's account. Reply at 11–13. Again, however, that interpretation is found nowhere in the statute and would have sweeping privacy implications—every time a service provider deactivates a user's account for any reason, the contents of the user's communications would become available for disclosure to anyone, including the U.S. government. *See* 18 U.S.C. § 2703(a) (setting forth restrictions on the U.S. government's ability to require disclosure of "an electronic communication, that is in *electronic storage* in an electronic communications system" (emphasis added)). That is not what the statute says and could not be what Congress intended when it enacted the SCA. *See* Reply at 8 (quoting SCA legislative history: "But most important, if Congress does not act to protect the privacy of our citizens, we may see the gradual erosion of a precious right. Privacy cannot be left to depend solely on physical protection, or it will gradually erode as technology advances …. [T]he bill represents a fair balance between the privacy expectations of citizens and the legitimate needs of law enforcement.").

## III.    Petitioner's Requests Do Not Fall Within the SCA's Exceptions.

Petitioner argues that its requests fall within two of the SCA's exceptions—Sections 2702(b)(3) and 2702(b)(5)—and urges this Court to issue "guidance" to that effect. *See* Reply at 14–18. But neither exception supports issuance of The Gambia's subpoena.[2]

Under Section 2702(b)(3), an ECS provider "may divulge the contents of a communication … with the lawful consent of the originator or an addressee or intended recipient of such communication." One court has held that consent can be implied where the communications were configured to be "readily accessible to the general public, and available to any person via the

---

[2] Although The Gambia cites Section 2703(b)(3), *see* Reply at 16, Facebook assumes this is a typographical error and Petitioner meant to cite Section 2702(b)(3).

7

Internet, whether that person is registered with the social media provider, or not." *Facebook, Inc. v. Super. Ct. of the City and Cty. of S.F.*, 4 Cal. 5th 1245, 1280 (Cal. 2018) (quotation omitted). But even if that interpretation is correct, Petitioner's requests are not limited to such publicly available communications—*not even close*. RFPs 1–11, for example, seek "*[a]ll* documents and communications produced, drafted, [posted], or published" by a laundry list of unidentified Facebook accounts allegedly affiliated with the Myanmar government, including individual accounts, groups, and pages. O'Toole Decl., Ex. 1, Schedule A (RFP Nos. 1–11). It is the applicant's "burden to come to the court with [a] narrowly-tailored request in the first instance." *In re Ex Parte Application of Nokia Corp.*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013). "[T]he job of the Court is not to re-write the Application to narrow its breadth of scope." *Rainsy*, 311 F. Supp. 3d at 1116 (denying application).

Petitioner further argues, without supporting legal precedent, that Facebook could divulge the requested communications pursuant to Section 2702(b)(5), which permits an ECS provider to voluntarily divulge the contents of a communication as necessary to protect its rights or property. 18 U.S.C. § 2702(b)(5). According to Petitioner, Section 2702(b)(5) applies here because "[t]he Myanmar government and its agents" used Facebook in a manner that was "outside the bounds of the permissible use of [the] platform." Reply at 15. This is a novel and potentially quite broad interpretation, and a ruling that disclosure can be *compelled* based on this exception could severely degrade the privacy protections of the SCA. In such a regime, the privacy protections of the SCA would evaporate any time content is deemed to be in violation of a platform's rules. Indeed, the U.S. government could compel production of violating content with a simple subpoena, eviscerating the SCA's warrant requirement. No court has ever adopted such an exception.

In any event, as Petitioner concedes, disclosure pursuant to Section 2702(b)(3) or

8

2702(b)(5) is voluntary (Reply at 14)—it is not a basis upon which the Court can *order* disclosure by subpoena.  *See, e.g.*, *United States v. Wenk*, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017); *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co.*, 273 F. Supp. 3d 558, 560-61 (W.D. Pa. 2017); *Schweickert v. Hunts Point Ventures, Inc.*, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014); *In re Facebook*, 923 F. Supp. 2d at 1206 ("Any such ruling [on the exceptions] would amount to nothing more than an impermissible advisory opinion.").  As such, Petitioner cannot rely on these exceptions as a basis for this Court granting its subpoena.  *See* Reply at 15-16 (asking this Court to issue "guidance" to Facebook about Facebook's ability to voluntarily disclosure the information sought by the subpoena); *In re Grand Jury Subpoena No. 7409*, 2019 WL 2168874, at *1 (D.D.C. Jan. 24, 2019) ("Generally, courts do not issue advisory opinions.").

## CONCLUSION

Petitioner's application does not comply with the requirements of U.S. law and this Court should deny it.  Facebook will continue working with the IIMM and disclosing information pertaining to the genocide in Myanmar in a manner consistent with U.S. law.

Dated:  August 28, 2020

Respectfully submitted,

 /s/ Joshua S. Lipshutz
Joshua S. Lipshutz (D.C. Bar No. 1033391)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:  (202) 955-8217
Facsimile:  (202) 530-9614
jlipshutz@gibsondunn.com

Natalie J. Hausknecht (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642
Telephone:  (303) 298-5783

Facsimile: (303) 313-2826
nhausknecht@gibsondunn.com

*Counsel for Respondent Facebook, Inc.*

10

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for any party indicated as non-registered participants on this 28th day of August 2020.

                                                    */s/ Joshua S. Lipshutz*
                                               Joshua S. Lipshutz (D.C. Bar No. 1033391)