**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re*: Application Pursuant to 28 U.S.C. § 1782 of <br> THE REPUBLIC OF THE GAMBIA <br><br>        Petitioner, <br><br> v. <br><br> FACEBOOK, INC. <br><br>        Respondent. | Case No.: 1:20-mc-00036-JEB-DAR |

**THE REPUBLIC OF THE GAMBIA'S RESPONSE TO RESPONDENT'S SURREPLY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

I.      THE SCA PROTECTIONS DO NOT APPLY TO FOREIGN GOVERNMENT OFFICIALS AND ITS AGENTS BECAUSE THEY ARE NOT "USERS." ..................................................................................2

II.     THE SCA PROTECTIONS DO NOT APPLY TO "USERS" THAT ARE NOT "DULY AUTHORIZED." ...........................................................................4

III.    THE SCA PROTECTIONS DO NOT APPLY TO THE CONTENT THE GAMBIA REQUESTS BECAUSE THE CONTENT IS NOT IN "ELECTRONIC STORAGE." ....................................................................5

IV.    EVEN IF THE SCA APPLIES, THE COURT MAY ISSUE A LAWFUL SUBPOENA. ..................................................................................7

        A.    The SCA does not prevent the issuance of a lawful civil subpoena. ........................7

        B.    The Court may compel Facebook to produce the requested information. ...........................................................................................10

        C.    The Gambia's requests are circumscribed. ............................................................13

CONCLUSION ........................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Attorney Gen. of British V.I. v. Hyman*,
    No. 1:19-MC-164-RCL, 2020 WL 2615519 (D.D.C. May 23, 2020) ...................................... 13

*Bower v. Bower*,
    808 F. Supp. 2d 348 (D. Mass. 2011) ........................................................................................ 4

*Clinton v. Jones*,
    520 U.S. 681 (1997) .................................................................................................................. 8

*In re DoubleClick Inc. Privacy Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................................... 5

*Facebook, Inc. v. Superior Court*,
    417 P.3d 725 (Cal. 2018) ............................................................................................... 9, 10, 12

*Hately v. Watts*,
    917 F.3d 770 (4th Cir. 2019) ................................................................................................. 6, 11

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) .................................................................................................... 13

*Negro v. Superior Court*,
    179 Cal. Rptr. 3d 215 (Cal. Ct. App. 2014) ............................................................................ 12

*Rainsy v. Facebook, Inc.*,
    311 F. Supp. 3d 1101 (N.D. Cal. 2018) ..................................................................................... 3

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011) ..................................................................................................... 3

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ................................................................................................ 2, 6

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) ....................................................................................... 4

*United States v. Weaver*,
    636 F. Supp. 2d 769 (C.D. Ill. 2009) ...................................................................................... 5, 6

**Statutes**

8 U.S.C. § 2510(15) ........................................................................................................................ 2

18 U.S.C. § 2510(6) ........................................................................................................................2

18 U.S.C. § 2510(13) ......................................................................................................................2

18 U.S.C. § 2517(3) ..................................................................................................................8, 10

18 U.S.C. § 2701 ..........................................................................................................................11

18 U.S.C. § 2702(a) .....................................................................................................................11

18 U.S.C. § 2702(b)(2) ............................................................................................................8, 10

18 U.S.C. § 2703 ....................................................................................................................10, 11

**Other Authorities**

Alex Warofka, *An Independent Assessment of the Human Rights Impact of
    Facebook in Myanmar*, Facebook (Nov. 5, 2018),
    https://about.fb.com/news/2018/11/myanmar-hria/ ...............................................................13

Black's Law Dictionary (11th ed. 2019) .........................................................................................5

S. Rep. No. 99-541 (1986) ..............................................................................................................9

U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic
    Evidence in Criminal Investigations*, Justice.gov,
    https://www.justice.gov/sites/default/files/criminal-
    ccips/legacy/2015/01/14/ssmanual2009.pdf (last visited Sept. 4, 2020) ...................................6

## INTRODUCTION

Facebook promises to "provide case law on the appropriate interpretation" of The Gambia's arguments, but fails to deliver. Unopp. Mot. Surreply 3, ECF No. 11. Indeed, there is not a "consistent body of case law" interpreting whether Facebook communications of foreign government officials inciting violence, genocide, and hate are protected by the Stored Communications Act ("SCA" and the "Act"). Lacking appropriate case law on the unique questions presented here, Facebook instead presents and attempts to defeat straw man arguments and warns that if the Court rules in favor of The Gambia it would be setting "dangerous precedent." Surreply 1, ECF No. 15. Sending the message to genocidal conspirators who have abused Facebook's platform that their communications will not be protected and will instead be shared with those trying to hold them accountable under the 1948 Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention"), is exactly the type of precedent that Facebook should want to set. Simply put, based on the plain meaning of the statute, the SCA is not a bar to the issuance of a subpoena because it does not apply to the communications requested. To the extent the SCA applies, this Court may issue a lawful subpoena ordering Facebook to disclose the requested information pursuant to 18 U.S.C. § 2702(b)(3) and (5).

The Gambia welcomes the fact that—after year-long talks and in the face of this pending application—Facebook has finally decided to share information with the United Nations Independent Investigative Mechanism for Myanmar ("IIMM") that it "is permitted to produce under the SCA." *Id.* at 1–2. The Gambia's request however is separate and apart from the IIMM—the IIMM is not participating in the proceedings before the International Court of Justice ("ICJ")—and we have no reason to believe that any materials that Facebook would provide to

the IIMM would be sufficient to satisfy its obligations under 28 U.S.C. § 1782, even assuming that The Gambia were to itself obtain those same materials.

I. **THE SCA PROTECTIONS DO NOT APPLY TO FOREIGN GOVERNMENT OFFICIALS AND ITS AGENTS BECAUSE THEY ARE NOT "USERS."**

Facebook responds to The Gambia's argument that foreign government officials and agents are not protected "users" under the SCA by mischaracterizing it—pretending that The Gambia argues the "SCA doesn't apply when the *applicant* is foreign," *Id.* at 4, and entirely ignoring the textual language altogether related to government officials and agents. To be clear, the SCA is designed to protect the communications of users.[1] *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004) ("The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility."), which is a defined term under the Act meaning "person or entity." Foreign government officials and agents are not entities. Are they "persons" as that term is defined in the statute: We believe the answer clearly is "no," and Facebook does nothing to demonstrate otherwise.

A "person" is carefully defined under the statute as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."[2] Because U.S. government officials are expressly defined as "users," Congress' omission of foreign government officials suggests a clear intent to

---

[1] As The Gambia argued in its Reply, the prohibitions in 18 U.S.C. § 2702(a)(1) apply to an "electronic communication service." Reply 11–12, ECF No. 10. An electronic communication service "means any service which provides to *users* thereof the ability to send or receive wire or electronic communications." 1 8 U.S.C. § 2510(15) (emphasis added). "Users" are defined as "person or entity." 18 U.S.C. § 2510(13). "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

[2] 18 U.S.C. § 2510(6).

exclude them from the definition of "users" whose communications are protected under the SCA. If Congress wanted to add foreign officials to the definition of "user," it easily could have done so but instead chose only to protect U.S. government officials.  This is both unsurprising, as Congress likely had no desire to protect the types of communications requested here and is a clear textual choice that should be respected.  Accordingly, the protections of Act do not extend to foreign government officials or its agents, meaning that the SCA provides no ground for excluding from the subpoena the communications of foreign government officials.

      To be clear, The Gambia is not arguing that the SCA does not protect the communications of foreign "persons" generally since they could easily fit within the term "individuals" that is also included within the definition of "person."  But that same definition treats government officials differently and limits its protections to U.S. government officials. Thus, the cases to which Facebook cites in support of its position are inapposite because they simply find that the SCA applies to foreign "individuals," but do not analyze whether the Act includes protections for *foreign state official and agents*. For example, *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 729 (9th Cir. 2011) involved a foreign Indian citizen and *not* a foreign state actor.  Moreover, in its textual analysis of the Act, the *Suzlon* Court did not consider the limited definition of "person" under 18 U.S.C. § 2510(6) when applied to foreign government officials and agents.  Accordingly, *Suzlon's* analysis is inapplicable to this case.  The other cases to which Facebook cites are similarly inapplicable, either because they do not involve foreign officials or agents at all, or because they do not address the question of whether the SCA's express inclusion of U.S. government officials within the definition of "user" means that foreign officials and agents are not included.  See, e.g., *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114–15 (N.D. Cal. 2018) (analyzing whether the then-Prime Minister of Cambodia Hun

3

Sen's "likes" on Facebook constituted content without explicitly analyzing the application of the SCA to a foreign state actor); *Bower v. Bower*, 808 F. Supp. 2d 348, 349 (D. Mass. 2011) (denying plaintiff's motion to compel emails without analyzing whether the SCA applied to a person living in Egypt or a foreign state actor); *In re Toft*, 453 B.R. 186, 191 (Bankr. S.D.N.Y. 2011) (applying SCA to a Foreign Representative's request without analyzing whether the SCA applied to a foreign state actor). Because the SCA does not protect the communications of foreign government officials and agents, the Court may issue a subpoena seeking the content of communications involving those foreign government employees.

## II. THE SCA PROTECTIONS DO NOT APPLY TO "USERS" THAT ARE NOT "DULY AUTHORIZED."

The Gambia also argued that the SCA does not apply because any communications using Facebook's platform were not "duly authorized." In its Surreply, Facebook contends that a finding that Myanmar government officials were not "duly authorized" users[3] of Facebook's platform would set "dangerous precedent" where any term of service violation would remove SCA protections. Surreply 6, ECF No. 15. But The Gambia expressly limited its arguments to significant breaches where no one could have possibly thought their use of the system was "authorized." Holding that such communications are not "duly authorized" does not credibly raise the specter that a minor breach of user terms and conditions could evaporate the privacy protections for otherwise authorized users of the platform. Here, Myanmar government officials and agents used Facebook in such a way that is so egregious and outside the bounds of "duly authorized" use that Facebook conducted an extensive investigation into the abuse of its platform

---

[3] In support of this argument, Facebook states that the word "users" is not even mentioned in 18 U.S.C. § 2702. Surreply 6, ECF No. 15. It is true, the word "users" is not mentioned in section 2702. However, to divorce section 2702 and read it in isolation from the rest of the statute and, in particular, in isolation from the definitions section found in section 2510, would lead to an absurd result.

4

and, as a result, removed content and banned certain government officials from the use of its platform. The statute does not define "duly" or "authorized." Black's Law dictionary defines "duly" as "[i]n a proper manner; in accordance with legal requirements."[4] Using Facebook to incite violence, and coordinate crimes of genocide is not the "proper manner" to use Facebook. If this use of Facebook's platform was "duly authorized," it is hard to think of a use that is not.

### III. THE SCA PROTECTIONS DO NOT APPLY TO THE CONTENT THE GAMBIA REQUESTS BECAUSE THE CONTENT IS NOT IN "ELECTRONIC STORAGE."

Facebook argues that the communications continue to be held in "electronic storage" because Congress intended "electronic storage" to be construed broadly and that Facebook's storage of the requested information is being stored for "purposes of backup protection." Surreply 3, ECF No. 15. This is not the case. "Backup protection" is a term of art, and even under a liberal interpretation, Facebook's removal of information and preservation does not fall within the scope of "backup protection."

"Backup protection" has been narrowly construed by courts and the Department of Justice as copies a provider makes of a communication before transmission of a message is complete. The provider creates a "backup" copy of a communication before transmission of the communication is complete so that if the system crashes before transmission is complete, the provider can access the backup and complete transmission of the communication. Facebook's "post-transmission storage" is not covered under the definition of "electronic storage." *See, e.g., United States v. Weaver*, 636 F. Supp. 2d 769, 773 (C.D. Ill. 2009) (interpreting "electronic storage" as excluding previously opened emails stored by Microsoft for Hotmail users); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001) ("The cookies' long-

---

[4] *Duly*, Black's Law Dictionary (11th ed. 2019).

term residence on plaintiffs' hard drives places them outside of § 2510 (17)'s definition of 'electronic storage' and, hence, Title II's protection."); U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*, Justice.gov, at 123, https://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf (last visited Sept. 4, 2020) (noting that back up protection "does not include post-transmission storage of communications."). Even under the more liberal interpretation of "back up protection" offered in *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004),[5] Facebook's storage of removed content is not for backup protection because the content is not available to the user to access. *See Id*. at 1075 ("An obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again—if, for example, the message is accidentally erased from the user's own computer. The ISP copy of the message functions as a 'backup' for the user."); *Hately v. Watts*, 917 F.3d 770, 786 (4th Cir. 2019) (interpreting "backup" in the context of an opened email and observing that "when a user of a web-based email client . . . opens a message and then chooses not to delete the message after he reads it, the message remains 'reserved' on the host server for 'future use'—*i.e.*, in the event the *user* needs to view the message again." (emphasis added)). Because the SCA does not protect communications that are not in "electronic storage," the Court may issue a subpoena that Facebook has removed from its platform.

---

[5] *But see United States v. Weaver*, 636 F. Supp. 2d 769, 772 (C.D. Ill. 2009) (disagreeing with *Theofel*, noting that "[t]he Ninth Circuit's interpretation of storage for backup protection under the Stored Communications Act cannot be squared with legislative history and other provisions of the Act.").

**IV.     EVEN IF THE SCA APPLIES, THE COURT MAY ISSUE A LAWFUL SUBPOENA.**

Many of Facebook's SCA arguments do not apply to the entirety of the items requested under 28 U.S.C. § 1782, since Facebook effectively concedes that a user does not have protection for communications it released to the public (which The Gambia seeks to subpoena because they are no longer available due to their removal by Facebook).  Surreply 7–8, ECF No. 15.  But Facebook also raises a few arguments that go further, seeking to use the SCA to justify avoidance of the issuance of a subpoena entirely.  According to Facebook, for example, the SCA prevents issuance of a civil subpoena under 28 U.S.C. § 1782, since the SCA does not expressly allow such subpoenas.  *Id*. at 8–9.[6]  Facebook also argues that it should not be required to respond to the subpoena at all because disclosure under section 2702 is discretionary and The Gambia's requests are supposedly burdensome and overbroad.  Id. at 7–9.  These arguments similarly lack merit.

**A.  The SCA does not prevent the issuance of a lawful civil subpoena.**

Facebook's first argument for allowing it to resist the subpoena entirely suggests that because the SCA does not expressly authorize the issuance of subpoenas of the requested user's communications, Congress meant to prevent those communications from ever being subpoenaed in a civil case.  *Id. at* 9 (citing cases).  It is a remarkable argument.  Namely, Facebook is asking the Court to ignore the enumerated exception incorporating 18 U.S.C. § 2517(3), ignore the authority of 28 U.S.C. § 1782, ignore the legislative history of the SCA, and read a prohibition into the SCA that does not exist.  Facebook's argument is simply unsupported.  Most items are potentially subject to civil discovery, limited by normal limitations such as protective orders,

---

[6] *See also* Facebook's Opp'n 7, ECF No. 8 ("The SCA's prohibition on disclosure contains no exception for civil (or even criminal) subpoenas . . . .").

relevance limitations and careful judicial oversight.  Indeed, even the president of the United States is not immune from judicial process in civil cases and can be deposed even while he is in office.  *Clinton v. Jones*, 520 U.S. 681, 704 (1997) ("As we explained, 'neither the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances.'").  Nothing in the law or the language of the SCA would allow this Court to rule otherwise here.  In fact, parsed carefully, the SCA incorporates production in compliance with civil proceedings.

    First, section 2702(a) prohibits disclosure of customer communications, except as provided in the statute.  Section 2702(b) contains a number of exceptions that allow disclosure of communications, including pursuant to section 2517 of Title 18 of the U.S. Code.  *See* 18 U.S.C. § 2702(b)(2).  That provision, which creates a number of situations in which otherwise protected items under the Wiretap Act may be disclosed, was understandably incorporated into the SCA, as it serves the same purpose—allowing disclosure of otherwise private material under limited circumstances, including judicial supervision and process.  In particular, section 2517(3) authorizes disclosure of otherwise protected materials pursuant to a subpoena in all federal and state judicial proceedings.  *See* 18 U.S.C. § 2517(3) (authorizing disclosure of the "contents of [a] communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States . . . .").  Thus, under this statutory exception, which is adopted by reference under the SCA, the Court may issue a subpoena.

    Second, 28 U.S.C. § 1782, expressly permits the Court to order the production of documents or testimony for use in a proceeding in a foreign or international tribunal.  There is no special exception for material protected under the SCA.  To be sure, the Court may read the SCA

8

and section 1782 in harmony to exclude from the subpoena disclosures that would be otherwise "prohibited," but it would totally disrespect the authority of section 1782 to read the SCA as trumping it entirely.  As stated in its application, The Gambia meets the section 1782 standard, *see* Appl., ECF No. 1, and, thus, a subpoena may issue for materials whose disclosure is not otherwise prohibited by the SCA..

      Third, there is simply no showing in the legislative history or the text of the statute that Congress intended to make social media content entirely immune from the civil discovery process when a variety of other materials, including diaries, letters, and communications have always been subject to that process (subject to judicial oversight).  Instead, when Congress enacted the Electronic Communications Privacy Act ("ECPA"), among its concerns was the government's "power to maintain surveillance over citizens."  *See* S. Rep. No. 99-541, at 1 (1986); *Facebook, Inc. v. Superior Court*, 417 P.3d 725, 737 (Cal. 2018) ("[T]he main goal of the ECPA in general, and of the SCA in particular, was to update then existing law in light of dramatic technological changes so as to create a 'fair balance between the privacy expectations of citizens and the legitimate needs of law enforcement.'").  In the government surveillance context, the existence of administrative and grand jury subpoenas often provides the government with the ability to obtain materials held by third parties with minimal, if any judicial oversight.  As such, the SCA was needed in those circumstances to protect the privacy interests of users by ensuring that service providers did not simply release such materials without any consideration of those privacy interests.  Accordingly, the statute sets up clear rules for information service providers on what they can and cannot provide to government officials about their users.

      In contrast, in the civil discovery process, the stakes are lower, the privacy interests are less and, most importantly, there is an available process to ensure that judicial oversight of any

9

discovery can and will occur.  Thus, it is not surprising that, in the SCA, Congress carefully subscribed circumstances under which the government could obtain communications, *see* 18 U.S.C. § 2703, and even restricted the situations in which service providers could voluntarily provide communications to the government, but incorporated provisions from other privacy laws that expressly allowed those communications to be subpoenaed.  Congress was not concerned, when it passed the SCA, with civil subpoenas being issued pursuant to judicial process and, as here, pursuant to a federal law.  *Cf. Facebook, Inc.*, 417 P.3d at 752 (permitting a subpoena to issue because if Congress intended to preclude the issuance of a subpoena "such a prohibition would have been made clear in the Act.").  The Court may permissibly issue a subpoena.

### B. The Court may compel Facebook to produce the requested information.

Even if the SCA does not prohibit subpoenas generally, Facebook suggests alternatively that it at least prohibits subpoenaing information that is disclosable under section 2702(b).  Thus, according to Facebook, the items listed in section 2702(b) are disclosable pursuant to its sole discretion—discretion it is currently exercising against producing the requested communications.  Reading section 2702 and 2703 together, this would mean that Facebook could produce the information to anyone if it wants, but it also has unreviewable discretion to withhold the information from anyone except the government, if the government satisfies the provisions of section 2703.  Surreply 7–9, ECF No. 15.  It would be shocking if this were true, and it simply is not.  *Id.*  To read section 2702 in this manner would be erroneous and exactly the **opposite** of what Congress intended.

The simplest answer to this argument is that section 2702(b)(2) incorporates a provision from the Wiretap Act that expressly allows for civil subpoenas to be issued.  *See* 18 U.S.C. § 2702(b)(2), 2517(3).  Accordingly, the information set forth in section 2702 is in fact reachable by subpoena.

10

The more expansive answer is that in attempting to ensure that service providers like Facebook protect user privacy interests, the SCA sets out two categories of protection. Communications that fall within the categories identified in section 2702, such as communications already voluntarily disclosed by the user, receive lesser protection, meaning that the service provider could decide to voluntarily disclose them, even in the absence of judicial process.  Items that fall outside those categories are subject to the provisions of section 2703 when sought by the government.  This means that the service carrier is permitted to release the communications to law enforcement only if the government has obtained a warrant or, if a grand jury or administrative subpoena is being used, and only if law enforcement had given notice to the user and allowed him or her to assert their privacy interests.[7]  In other words, the SCA, identifies some items that can be voluntarily turned over to law enforcement and produced pursuant to a civil subpoena, but also provides procedural limits on whether the government can force disclosure of particular items, requiring it to at least seek the approval of a judicial officer. What the statute plainly does not do is set forth a series of communications in section 2702 that are off limits to the courts, even with notice and judicial review.

The SCA, in other words, makes the categories of items articulated in section 2702 the least protected; they may be disclosed pursuant to civil process, even may be voluntarily disclosed to law enforcement or others by the carrier in certain circumstances in the absence of a request.  But it cannot fairly be read more broadly to mean that Facebook (and only Facebook)

---

[7] 18 U.S.C. § 2703; *see generally*, *Hately*, 917 F.3d at 783 ("First, the Stored Communications Act limits the knowing disclosure of 'electronic communications' by 'electronic communication services' and 'remote computing services.' *See* 18 U.S.C. § 2702(a).  Second, the statute circumscribes the government's power to compel the disclosure of electronic communications.  *See* 18 U.S.C. § 2703. Third, the statute protects electronic communications from unauthorized access by third-parties.  *See* 18 U.S.C. § 2701.").

11

can decide, in its own discretion, to withhold from subpoena even those items that the user has decided already to release to the general public. Accordingly, where a communication falls within an enumerated exception, nothing in the Act permits Facebook to defy a lawful subpoena. *Facebook, Inc.*, 417 P.3d at 749–50; *Negro v. Superior Court*, 179 Cal. Rptr. 3d 215, 232 (Cal. Ct. App. 2014) ("The subdivision where 'may' appears is framed not as a grant of discretionary power *or* as the imposition of a mandatory duty but as a special *exception* to a general *prohibition.* In such a context all 'may' means is that the actor is excused from the duty, liability, or disability otherwise imposed by the prohibition. Stating that the actor 'may' engage in the otherwise proscribed conduct is a natural way—indeed the most natural way—to express such an exception.").

    Here, The Gambia's request falls under two exceptions, thus a lawful subpoena may issue. *See, e.g., Id.* at 234 ("In sum, we find no sound basis for the proposition that the Act empowers service providers to defy civil subpoenas seeking discovery of materials that are excepted from the Act's prohibitions on disclosure"). In particular, under the lawful consent exception in section 2702(b)(3), this Court may issue a lawful subpoena where a user has consented to the disclosure of its communications by configuring a social media posting public, by posting to large public audiences, and expressly consenting to the disclosure of private communications. *Cf. Facebook, Inc.*, 417 P.3d at 755 (analyzing Congressional intent and noting that "a provider may properly be subject to the burden of compliance with a subpoena" under the Act where a user has consented and listing different forms of consent.). The Court may also issue a lawful subpoena under 2702(b)(5), because the Myanmar government, its agents, and its officials used Facebook in such a manner that Facebook may release the requested information to protect itself and its property.

### C. The Gambia's requests are circumscribed.

Lastly, Facebook encourages the Court to reject The Gambia's requests outright because they are burdensome and overbroad. Surreply at 7–10, ECF No. 15. This is not the case.

Facebook is a billion-dollar company whose core competency is data analysis and data organization. For Facebook, pulling data related to The Gambia's request would be no monumental task. What is more, in this case, Facebook has already investigated the Myanmar government's manipulation of its platform, has removed users because of it, and preserved documents (by its own admission)[8] that are likely responsive to The Gambia's requests. Indeed, Facebook itself has acknowledged that it is already identifying similar materials in response to a request from IIMM. Given that concession, and the efforts Facebook has already made to identify and review this material, any additional burden here would be minimal.

Moreover, contrary to Facebook's assertions, The Gambia's requests are quite specific. Relying on limited publicly available information from Facebook's website and other sources, The Gambia named 17 officials, 4 organizations, and specific pages in its request. Its other requests are narrowed by timeframe, and to accounts, groups, or pages that Facebook has suspended or terminated for violations of its policies, coordinated inauthentic behavior, concerns relating to human rights, or the dissemination of hate speech. Appl., ECF No. 1. To the extent the Court has any concerns regarding the scope of discovery, they can be cured. *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."); *Attorney Gen. of British V.l. v. Hyman*,

---

[8] Alex Warofka, *An Independent Assessment of the Human Rights Impact of Facebook in Myanmar*, Facebook (Nov. 5, 2018), https://about.fb.com/news/2018/11/myanmar-hria/ (stating it is preserving data).

13

No. 1:19-MC-164-RCL, 2020 WL 2615519, at *9 (D.D.C. May 23, 2020) (allowing an applicant to narrow its requests).

## CONCLUSION

The SCA is not a bar to The Gambia's 28 U.S.C. § 1782 application and the Court should should grant it.

Dated:  September 4, 2020

Respectfully submitted,

 /s/ Timothy P. O'Toole
Timothy P. O'Toole (D.C. Bar No. 469800)
Aiysha S. Hussain (D.C. Bar No. 1019848)
MILLER & CHEVALIER CHARTERED
900 16th Street, N.W.
Washington, D.C. 20006
Telephone: (202) 626-5552
Fax: (202) 626-5801
totoole@milchev.com
ahussain@milchev.com

*Counsel for Applicant, Republic of The Gambia*

14

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 4th day of September 2020.

                                                */s/ Timothy P. O'Toole*
                                           Timothy P. O'Toole (D.C. Bar No. 469800)