# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

*In re* Application Pursuant to 28 U.S.C. § 1782 of

THE REPUBLIC OF THE GAMBIA,

    Petitioner,

  v.

FACEBOOK, INC.,

    Respondent.

Case: 1:20-mc-00036-JEB-ZMF

**FACEBOOK'S OPPOSITION TO THE GAMBIA'S MOTION FOR RECONSIDERATION OF THE COURT'S DECLINATION TO CONSIDER ITS ALTERNATIVE GROUNDS FOR SUSTAINING THE MAGISTRATE JUDGE'S ORDER**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    The Gambia Fails to Meet the Rule 54(b) Standard For Reconsideration .............. 2

        A.    The Gambia Has Not Shown "Clear Error" Warranting Reconsideration ....................................................................................... 3

        B.    The Gambia Was Not Confused About When to File Its Objections ......... 4

    II.    The Gambia's "Alternative Grounds" Do Not Merit Reconsideration ................... 5

        A.    The SCA Bars the Disclosure of Communications by Foreign Officials ......................................................................................................... 6

        B.    The SCA Disclosure Prohibitions Apply Despite Terms-of-Service Violations ..................................................................................................... 9

    III.    The Gambia's "Alternative Arguments" Are Not Supported by the Record ........ 12

CONCLUSION ....................................................................................................................... 13

## INTRODUCTION

As The Gambia concedes, the Court may grant reconsideration only if it committed "clear error" in its initial decision. Dkt. 32 at 4. "Clear error" occurs solely when a decision is "dead wrong." *Lardner v. FBI*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) (quotation omitted). Because The Gambia has not come close to meeting that high standard, this Court should deny the motion.

Here, the Court correctly declined to review The Gambia's self-styled "alternative" grounds, which would have required setting aside or modifying holdings in the Magistrate Judge's Order in the absence of a timely objection to them under Local Civil Rule 72.2(b) or Federal Rule of Civil Procedure 72. The Gambia cites no authority (let alone binding precedent) finding clear error in these circumstances. And while The Gambia attempts to shift blame for its oversight to the Court's briefing schedule, the fact that The Gambia properly objected to a different holding in the Order disposes of any argument that it was actually confused. Dkt. 27 at 40.

In any event, this Court should reject The Gambia's two purported "alternative grounds" for affirmance. The Gambia does not even attempt to show why consideration of these "grounds" would lead to a different result, perhaps for good reason: both arguments are meritless. Each depends on an implausible interpretation of a term—"user"—that does not appear in the relevant disclosure provisions of the Stored Communications Act ("SCA").

The Court should deny The Gambia's Motion for Reconsideration.

## STANDARD OF REVIEW

"[A]s a rule a court should be loathe to revisit its own prior decision in the absence of extraordinary circumstances." *Murray v. Amalgamated Transit Union*, 99 F. Supp. 3d 149, 157 (D.D.C. 2015) (quotation omitted). Although "reconsideration is appropriate as justice requires," *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014) (quotation omitted), that "phrase . . . is a shorthand for more concrete considerations." *Singh v. George Washington*

1

*University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Specifically, "a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011) (quotation omitted); *see also Estate of Klieman ex rel. Kesner v. Palestinian Auth.*, 923 F.3d 1115, 1122 (D.C. Cir. 2019) (same), *vacated on other grounds*, 140 S. Ct. 2713 (2020) (mem).

The Gambia invokes only "clear error" here (Dkt. 32 at 4), so this Court considers only whether that high standard has been met. *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235 237 (D.D.C. 2003) (citing *In re: Vitamins Antitrust Litig.*, 2000 WL 34230081, at *1 (D.D.C. Jul. 28, 2000)). A "clear error" is "the type of mistake that is 'dead wrong.'" *Cable News Network, Inc. v. FBI*, 401 F. Supp. 3d 187 (D.D.C. 2019) (quoting *Lardner*, 875 F. Supp. 2d at 53). The error in other words "must strike readers as erroneous 'with the force of a five week old, unrefrigerated dead fish.'" *Id.* (quoting *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015).

"Ultimately, the moving party has the burden to demonstrate 'that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.'" *United States v. All Assets Held at Bank Julius*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018) (quotation omitted)).

## ARGUMENT

### I. The Gambia Fails to Meet the Rule 54(b) Standard For Reconsideration

There was no error (much less clear error) in the Court's refusal to consider objections that The Gambia did not properly raise. None of the out-of-circuit cases that The Gambia cites excuses its failure to object to the Order's holdings against it. The Gambia also knew it was required to file timely objections under the Court's briefing schedule, as demonstrated by the fact that it *did* file a proper objection—just not the two it now belatedly asks this Court to revive.

### A. The Gambia Has Not Shown "Clear Error" Warranting Reconsideration

This Court's declination to consider The Gambia's "alternative" arguments was not in clear error under the local or federal rules. "Any party" may file "written objections to a magistrate judge's ruling" under LCvR 72.2(b). The Gambia here failed to do so.

The Gambia does not dispute that its request for this Court to "uphold" the Order on "alternative grounds" would have required modifying or setting aside holdings in that Order to which The Gambia did not object. *See* Dkt. 28 at 16 (citing Resp. at 38–40). Yet The Gambia failed in form and substance to explain why those portions of the Order should be altered. It did not "specifically designate the order or part thereof to which objection is made, and the basis for the objection" with regard to those holdings. LCvR 72.2(b). Nor did it attempt to explain in substance what specifically the magistrate judge had gotten wrong. This Court thus correctly held that The Gambia's self-styled "alternative" arguments were improper and declined to consider them. *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 102 (D.D.C. 2009) (refusing to consider objections that "failed to comply with Local Civil Rule 72.2(b)"); LCvR 72.2(c) (permitting "a district judge" to "modify or set aside any portion of a magistrate judge's order under this Rule" only "[u]pon consideration of objections filed in accordance with this Rule"); *see also* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); *A.B. ex rel. Holmes-Ramsey v. District of Columbia*, 19 F. Supp. 3d 201, 206 (D.D.C. 2014) ("Failure to enter a timely objection will result in waiver" under Rule 72(a).).

The Gambia offers no serious rejoinder to this straightforward application of LCvR 72.2. It does not cite any D.C. Circuit case (or any other case) analyzing the application of LCvR 72.2. This Court's prior holding is not subject to reconsideration under the "clear error" standard where, as here, "none of the cases the [movant] cites are binding precedent in the District of Columbia

3

Circuit." *Singh*, 383 F. Supp. 2d. at 102; *cf. Estate of Klieman*, 923 F.3d at 1122–23 (considering the "governing law at the time of the district court's ruling" in "clear error" analysis).

The out-of-circuit cases that The Gambia cites also do not help its cause. Dkt. 32 at 5–6. None of these cases purports to involve the application of Rule 72(a), and certainly not a rule like LCvR 72.2, by a district court, which The Gambia concedes governs the question at issue. *United States v. Street*, 917 F.3d 586, 597 (7th Cir. 2019) (interpreting criminal procedure rule); *Vanwinkle v. United States*, 645 F.3d 365, 371 (6th Cir. 2011) (interpreting circuit-specific rules of appellate waiver); *Cooper v. Taylor*, 103 F.3d 366, 372–74 (4th Cir. 1996) (en banc) (Luttig, J., concurring) (discussing Fourth Circuit's rule of appellate waiver); *M. v. Falmouth School Dep't*, 847 F.3d 19, 25–27 (1st Cir. 2017) (interpreting appellate rule of waiver).

The Gambia's citation to *M.* is instructive of what it could have done in this case but chose not to do. In *M.*, a school that substantially prevailed before the magistrate judge in an Individuals with Disabilities Education Act ("IDEA") suit, yet still wished to object to an adverse subsidiary holding about its obligations to the student, "fairly raise[d] the issue" in its "response" to the other side's objections by presenting a direct "challenge" to that adverse holding. *M.*, 847 F.3d at 25–26. The school district made clear that, despite the magistrate's bottom-line ruling in its favor on the issue whether it had violated the IDEA, it intended to contest before the district court that it even owed the student certain obligations to provide specific educational programs and explained in detail the issues it had with the magistrate judge's specific conclusions to the contrary. Here, The Gambia did not provide the Court with such a substantive discussion of how the Order erred.

The Gambia supplies no authority, binding or otherwise, excusing its failure to provide the district court with a LCvR 72.2-compliant objection to the Order's adverse holdings.

**B.  The Gambia Was Not Confused About When to File Its Objections**

The Gambia's further attempt to shift blame onto this Court for its own failure to file proper

4

objections under the local and federal rules also rings hollow. Specifically, The Gambia now claims that the Court should reconsider its ruling because "the Court (mistakenly) ordered only Facebook to file 'objections,'" and therefore The Gambia had no opportunity to file its own objections. Dkt. 32 at 8. But that is not plausible on the record in this case.

The Gambia was never under any misapprehension about the need to file objections to the Order's adverse holdings. The parties stipulated to a simultaneous briefing schedule that anticipated both parties would file cross-objections. *See* Dkt. 23. The Court then determined that "simultaneous briefing is considerably less helpful than sequential" and ordered a sequential briefing schedule for those cross-objections. Dkt. 23-1.

The Gambia was well aware that it had to file any of its objections to the Order with its Response under this briefing schedule, as demonstrated by the fact that The Gambia actually did file a proper objection in its brief. *See* Dkt. 27 at 40 ("Rule 72(a) Objection to the Denial of a Deposition"). That The Gambia included only this single objection, and chose not to include any proper objection for its purported "alternative grounds"—which themselves would require modifying or setting aside the Order—was not a result of the Court's briefing schedule.

The Gambia also was free to ask for a sur-reply at the November 12, 2021, hearing or seek clarification from the Court at any point. It did not because there was never any confusion.

**II.     The Gambia's "Alternative Grounds" Do Not Merit Reconsideration**

Even if this Court credits The Gambia's procedural arguments and considers the substance of its motion for reconsideration, The Gambia has failed to show its "alternative" arguments warrant reconsideration. A motion for reconsideration premised on "clear error" must show more than mere "error"; it must show a mistake by the Court that was "dead wrong." *Cable News*, 401 F. Supp. 3d at 192 (quoting *Mohammadi*, 947 F. Supp. 2d at 78 (D.D.C. 2013). Here, The Gambia

makes no effort to show that the Court's reconsideration of its "alternative" arguments would compel a different result.

In fact, The Gambia fails even to *argue* the merits of its "alternative" arguments, after giving them only cursory treatment in its initial pleading. Dkt. 327 at 38–40. A "litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments." *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) (quotations omitted). Nor does a party's failure to "spell out [its] arguments squarely and distinctly, . . . morph into the Court's error" justifying reconsideration. *Cable News*, 401 F. Supp. 3d at 192 (quotation omitted). The Gambia's failure to demonstrate the correctness of its two "alternative" arguments in its Motion is reason enough to deny its request to revisit those arguments on the merits now. *Id.* at 193 (holding movant's failure to "wrestle with these issues, much less establish the correctness of the position it favors" is a "deficiency" that "adds to the stack of reasons counseling against" reconsideration).

But The Gambia's "alternative" arguments are also meritless, resting on a fundamental misreading of the SCA's definition of a term—"user"—that does not even *appear* in the statute's disclosure prohibitions. Many federal courts have rejected the limitation that The Gambia now seeks to impose on those disclosure provisions (as did Magistrate Judge Faruqui in his Order). This Court should deny The Gambia's Motion for Reconsideration on any one of these several additional grounds.

### A. The SCA Bars the Disclosure of Communications by Foreign Officials

The Gambia first contends that Myanmar government officials do not qualify as "users" under the SCA and their communications are thus not prohibited from disclosure. Dkt. 27 at 38. But this argument is contrary to the statute's text, and it has been rejected by a decade of caselaw holding that the SCA's disclosure prohibitions apply with full force to the communications of

6

foreign individuals or entities.  Dkt. 15 at 4–5 (collecting cases).

Even a quick examination of the SCA's text defeats The Gambia's argument.  The SCA's disclosures prohibitions do not even *use* the term "user."  Both provisions provide instead that "a person or entity providing an electronic communication service [or remote computing service] to the public shall not knowingly divulge to any person or entity the contents of *a communication*." 18 U.S.C. § 2702(a)(1)–(2) (emphases added).  The scope of these prohibitions cannot turn on the statute's definition of "user" as a result.  *See Bates v. U.S.*, 522 U.S. 23, 30 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").  Rather, as the Order held, The Gambia's argument "tries to give the definition of 'user' much more power than it has" since "Congress could have limited the application of the SCA to the communications of particular users, but it did not."  Order at 10 n.4.  Or, in other words, the SCA's disclosure prohibitions "list numerous exceptions to the rule . . . [b]ut neither . . . list citizenship as an exception."  *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 729 (9th Cir. 2011).

The Gambia's argument that foreign officials are not "users" under the SCA's definition of the term is also flat wrong.  Under the statute, a "user" is "*any person or entity* who—(A) uses an electronic communication service; and (B) is duly authorized by the provider of such service to engage in such use."  18 U.S.C. § 2510(13) (emphasis added).  The SCA then defines "person" with the "broadest possible language" to include "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."  Order at 10 (quoting 18 U.S.C. § 2510(6)).  The statute does not define the scope of "any . . . entity" further.  18 U.S.C. § 2510(13).

Foreign persons who happen to be government officials fit squarely within this broad definition of "user."  As the Ninth Circuit succinctly explained, "[a]ny person means any person,

7

including foreign citizens." *Suzlon Energy*, 671 F.3d at 729. Foreign citizens are likewise unambiguously "individuals," including when they purportedly happen to hold government titles or offices. *See id.*; *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1115 (N.D. Cal. 2018) (holding SCA prohibited disclosure of communications of Cambodian Prime Minister); *Bower v. Bower*, 808 F. Supp. 2d 348, 349 (D. Mass. 2011) (holding SCA prohibited disclosure of emails of person in Egypt); *In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) (SCA offers a "comprehensive scheme of statutory protection, available to aliens"). Moreover, as the Order notes, the "inclusion of 'entity' in the definition of 'user'" is best read to include any "'governmental unit[] that has a legal identity apart from its members or owners,'" and therefore any purported "officials" of foreign governments are users likewise covered by this definition. Order at 11 (quoting *Black's Law Dictionary* (11th ed. 2019)).

The Gambia has never cited any caselaw to support its unorthodox misreading of the SCA to the contrary or offered any rebuttal to the many federal cases rejecting it. The Gambia also has never provided any support for its assertion that the SCA "is designed to protect the communications of 'users'" as "carefully defined under the statute" (Dkt. 27 at 38) when the disclosure prohibitions do not even *mention* that term. Nor has The Gambia ever cited any legislative history to support that contention, and the actual legislative history shows "Congress was concerned with 'civil litigants issuing discovery requests'" and "thus sought to protect all individuals from unauthorized access." Order at 11 (citing *Suzlon*, 671 F.3d at 730).

The Gambia instead ignores these issues and reasserts that the inclusion of "any employee, or agent of the United States or any State or political subdivision thereof" in the definition of "user" would be "surplusage" if government officials were already included as "individuals" in that term. Dkt. 27. at 38. But that misunderstands the SCA's text. As the Order explains, this definitional

8

choice "merely highlights government agents' inclusion . . . not their exclusion from the 'any individual' category." Order at 10–11. The agent clause is given full effect by ensuring that domestic agents are considered "users" under the Act when acting as officials, even though the additional inclusion of "any individual" or "any entity" *also* may overlap with the same people. Indeed, any "partnership," "joint stock company," or "corporation" included in the SCA's specific list of defined "persons" is likewise included already as "any entity" in the definition of "user" under the statute as well.

The breadth of these many terms does not render their separate enumeration superfluous in this context, as The Gambia contends. Quite the opposite; these broad terms merely demonstrate Congress' unambiguous intent to extend the SCA's definition of "user" to the fullest extent to reach "*any*" conceivable individual or entity that might create communications through the use of an electronic communications service. *See, e.g.*, *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 107 (2011) (explaining "[t]here are times when Congress enacts provisions that are superfluous" and "the canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute") (quotations omitted)). Often, the "itemization of terms" in a list cannot each be given "distinct meanings" and "[f]ocusing on such semantics misses the larger purpose of the clause" when the plain purpose of such overlapping itemization, as here, is simply to "cast[] a broad net." *Kutten v. Sun Life Assur. Co. of Canada*, 759 F.3d 942, 945 (8th Cir. 2014). The Gambia fails to respond to this critical holding in the Order.

The Gambia has not shown that reconsideration of its first "alternative" argument would result in the reversal of any "clear error" in this Court's prior judgment.

**B.   The SCA Disclosure Prohibitions Apply Despite Terms-of-Service Violations**

The Gambia next contends that the SCA does not prohibit the disclosure of

9

communications that violate a provider's terms of service because the term "users" also includes only persons or entities who are "duly authorized by the provider of such service to engage in such use." Resp. at 39 (quoting 18 U.S.C. § 2510(13)); *see* Order at 11 n.5 (dismissing The Gambia's argument). This argument fails for the same reasons as The Gambia's first one: The SCA's disclosure prohibitions do not even mention the term "users," which means that term cannot plausibly limit their scope. *See* 18 U.S.C. § 2702(a)–(b).

But The Gambia's interpretation of the statutory term "user" also once again fails on its own terms. The term "user" appears in Section 2701 of the SCA and serves a purpose unrelated to the statute's disclosure prohibitions located in Section 2702. *See Bates*, 522 U.S. at 29–30 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)). Specifically, Section 2701 criminalizes unauthorized access to communications in storage at a facility that provides electronic communications services. 18 U.S.C. § 2701(a), (c)(2). These provisions prevent the external hacking of communications maintained in storage at a facility with a provider like Facebook by those who are unauthorized to gain that access. *Id.* But this anti-hacking provision excludes from these penalties *authorized* access to such covered communications and then spells out who can authorize this access—namely, (1) "the person or entity providing a wire or electronic communications service" *or* (2) "a *user* of that service with respect to a communication of or intended for that *user*." *Id.* § 2701(c)(1)–(2) (emphasis added). In other words, the SCA provides that a "user" may authorize someone to access the user's communications stored in a facility, but only if that user is first shown to be "us[ing] an electronic communication service" and "duly authorized by the provider of such service to engage in such use." 18 U.S.C. § 2510(13).

10

The statutory text upon which The Gambia relies thus *excludes* certain individuals from the scope of persons permitted to authorize lawful access to certain stored communications under Section 2701.  *General Bd. of Glob. Ministries of the United Methodist Church v. Cablevision Lightpath, Inc.*, 2006 WL 3479332, at *3 (E.D.N.Y. Nov. 30, 2006) (explaining SCA provisions were "designed to create a cause of action against computer hackers" and collecting cases); *id.* (explaining Section 2701 "address[es] 'the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public'").  But it has no bearing on the scope of Section 2702's entirely separate disclosure prohibitions.

Nor does The Gambia's sweeping assertion that terms-of-service violations render a person or entity no longer a "user" under the SCA plausibly comport with the broader statutory scheme.  Under The Gambia's understanding of "authorized," a user who committed a terms-of-service violation would become unauthorized to access communications stored by that service under Section 2701.  As such, The Gambia's interpretation would turn terms-of-service violations into criminal acts under Section 2701, subjecting users to criminal liability for accessing their own accounts after a contractual violation.  The Supreme Court has already rejected the notion that analogous "authorization" language in the other statutes can be read in that manner.  *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021) (rejecting argument that Congress intended to criminalize "using a pseudonym on Facebook" under identical "authorization" language in the Computer Fraud and Abuse Act); *Sandvig v. Barr*, 451 F. Supp. 3d 73, 87 (D.D.C. 2020) (holding "terms of service do not constitute 'permission requirements' that, if violated, trigger criminal liability" and explaining that "enabling private website owners to define the scope of criminal liability does raise concerns"); *see also United States v. Thomas*, 877 F.3d 591, 596 (5th Cir. 2017)

11

("a narrow reading of [§ 1030(a)(2) of the CFAA] avoids criminalizing common conduct—like violating contractual terms of service . . .—that lies beyond the antihacking purpose of the access statutes").

The Court should reject The Gambia's attempt to invent an atextual limit on the scope of the SCA's disclosure prohibitions based solely on an unreasonable and implausible interpretation of the definition of another SCA term not even used by those provisions. Dkt. 15 at 4–6. The Gambia's so-called "alternative" grounds are meritless.

**III.   The Gambia's "Alternative Arguments" Are Not Supported by the Record**

The Gambia's "alternative arguments" rely on factual assertions that are not supported by evidence in the record. As a result, these arguments cannot support the overbroad subpoena it seeks as true "alternative" grounds to replace the Order's "electronic storage" ruling.

For instance, The Gambia claims, without citation to any record evidence, that the "electronic communications" of "foreign government officials . . . form the bulk of The Gambia's requests" and that every user removed by Facebook for coordinated inauthentic behavior in 2018 must have engaged in a "conscious and fraudulent misrepresentation" amounting to a common-law tort at sign-up. Dkt. 27 at 39–40. But there is nothing in the record to support The Gambia's claims as to the hundreds of accounts from which it seeks to subpoena private content and communications. *See* Dkt. 24 at 10 (citing *Removing Myanmar Military Officials from Facebook*, FACEBOOK (Aug. 18, 2018), https://about.fb.com/news/2018/08/removing-myanmar-officials/ (explaining accounts were "linked to the Myanmar military" or "connected" to certain banned individuals or organizations); *see also* Order at 11 n. 5 (explaining "the SCA is not tied to terms of service violations" and The Gambia's "duly authorized" argument would require "analyzing . . facts not before this court, such as when did each account violate the terms of service").

12

Accordingly, The Gambia has not shown that the two arguments it presents as "alternatives" to the Order's "electronic storage" ruling could justify a subpoena for the content of hundreds of removed private accounts or any further relief at this point.

## CONCLUSION

The Court should deny The Gambia's Motion for Reconsideration.

Dated:  January 10, 2022

Respectfully submitted,

 /s/ Joshua S. Lipshutz
Joshua S. Lipshutz (D.C. Bar No. 1033391)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  (202) 955-8217
Facsimile:  (202) 530-9614
jlipshutz@gibsondunn.com

Natalie J. Hausknecht (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone:  (303) 298-5783
Facsimile:  (303) 313-2826
nhausknecht@gibsondunn.com

*Counsel for Respondent Facebook, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for any party indicated as non-registered participants on this 10th day of January 2022.

 */s/ Joshua S. Lipshutz*
Joshua S. Lipshutz (D.C. Bar No. 1033391)