**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| *In re*: Application Pursuant to 28 U.S.C. § 1782 of<br><br>THE REPUBLIC OF THE GAMBIA<br><br>            Petitioner,<br><br>      v.<br><br>FACEBOOK, INC.<br><br>            Respondent. | **Case No.: 1:20-mc-00036-JEB-ZMF** |

**THE REPUBLIC OF THE GAMBIA'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S DECLINATION TO CONSIDER ITS ALTERNATIVE GROUNDS FOR SUSTAINING THE MAGISTRATE JUDGE'S ORDER**

# INTRODUCTION

Having successfully (through erroneously) persuaded the Court not to consider The Gambia's alternative grounds for affirming the magistrate judge's ruling in its favor (*see* ECF No. 28 at 16), Facebook barely defends that procedural ruling at all, failing to engage with the central argument in The Gambia's motion for reconsideration – that as the *prevailing* party in the discovery dispute The Gambia was not required to file objections. Instead, Facebook now wants to jump to the merits of the alternative grounds (despite having earlier persuaded the Court not to consider them), and then faults The Gambia for not doing the same. See ECF No. 33 at 5–13. But even here Facebook ignores the thrusts of the Gambia's alternative grounds arguments, which make clear that there were other compelling (and narrower) grounds to support the magistrate judge's ultimate ruling that disclosure of the subpoenaed information was not prohibited by the Stored Communications Act (SCA). In short, the Court should reconsider its erroneous procedural ruling and uphold the magistrate judge's order on the alternative grounds raised by The Gambia in its earlier briefing before this Court. *See* ECF No. 27 at 38–40.

# ARGUMENT

**I.  THE COURT COMMITTED A CLEAR ERROR BY NOT CONSIDERING THE GAMBIA'S ALTERNATIVE GROUNDS FOR UPHOLDING THE MAGISTRATE JUDGE'S ORDER.**

The sole (procedural) question presented in The Gambia's motion for reconsideration is whether the Court clearly erred by agreeing with Facebook not to consider The Gambia's alternative grounds for upholding the magistrate judge's order when, as the prevailing party, The Gambia had labeled them as "alternative grounds" instead of as "objections." ECF No. 32. The answer is yes. *See id.* at 4-8. In its opposition, Facebook does not even engage with The Gambia's argument, much less the key fact that The Gambia was the prevailing party on the SCA issue. *See generally* ECF No. 33. For good reason: Facebook has no response.

Instead of engaging with The Gambia's argument, Facebook accuses The Gambia of sandbagging the Court by "fail[ing] in form and *substance* to explain why those portions of the Order should be altered." ECF No. 33 at 3 (emphasis added); *see also id*. ("Nor did it attempt to explain in *substance* what specifically the magistrate judge had gotten wrong.") (emphasis added). Nothing could be further from the truth. The Gambia argued "in substance" to the magistrate judge that the Myanmar officials are not authorized users under the SCA (*see* ECF No. 10 at 5-11; ECF No. 16 at 2-5); the magistrate judge rejected "in substance" The Gambia's argument in its Order (*see* ECF No. 22 at 10-11); and The Gambia argued "in substance" to *this Court* that the Myanmar government officials are not authorized users under the SCA (*see* ECF No. 27 at 38-40; *see also id.* at 38 (specifically referring to what "the magistrate judge found")). The "substance" of The Gambia's argument was therefore presented both to the magistrate judge and to this Court.

Facebook's argument, really, is that The Gambia failed "in form" by not using the proper nomenclature, and in doing so, waived its right to argue alternative grounds for upholding the magistrate judge's order. This argument is silly, which is probably why Facebook tries so hard to argue that The Gambia failed "in form and *substance*." In any event, Facebook cites no authority – and The Gambia is aware of none – that says a prevailing party waives review of alternative grounds for upholding a magistrate judge's order by not labeling those grounds as "objections." Once again, Facebook misstates the facts and holding of *Klayman v. Judicial Watch, Inc.*, 628 F.Supp.2d 98 (D.D.C. 2009). The court in *Klayman* did not "refus[e] to consider objections that 'failed to comply with Local Civil rule 72.2(b),'" as Facebook contends. ECF No. 33 at 3. To the contrary, the court in *Klayman* "*declined* to strike Klayman's objections for noncompliance with the local rules and instead proceeded to the *merits* of Klayman's objections." 628 F.2d at 102

2

(emphasis added). And unlike The Gambia, Klayman had *lost* the discovery dispute before the magistrate judge. *See id*.

Facebook criticizes The Gambia for not citing to a "D.C. Circuit (or any other case) analyzing the application of LCvR 72.2." ECF No. 33 at 3. It appears that this unique situation has not come up yet in this jurisdiction, probably because the law is so clear that a prevailing party can urge affirmance on alternative grounds without affirmatively challenging an order that ruled in its favor. But it has come up in other circuits, and The Gambia cited *four* circuit court opinions that dealt with nearly the exact issue presented here – whether a prevailing party has waived its right to present alternative grounds by not objecting to the lower court's order. *See* ECF No. 32 at 5 (citing *United States v. Street*, 917 F.3d 586, 598 (7th Cir. 2019); *Vanwinkle v. United States*, 645 F.3d 365, 371 (6th Cir. 2011)); *M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 26 (1st Cir. 2017); *Cooper v. Taylor*, 103 F.3d 366, 373 (4th Cir. 1996)). Each of those cases supports The Gambia's position here. And while none specifically involves Rule 72, the Seventh Circuit in *Street* compared "[t]he waiver rules in [criminal] Rule 59(b)(2) and its civil counterpart, Fed. R. Civ. P. 72(b)" before declaring that "'a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation.'" *Street*, 917 F.3d at 598 (quoting *Vanwinkle*, 645 F.3d at 371).

Facebook contends that "[t]he Gambia's citation to *M.* is instructive of what it could have done in this case but chose not to do." ECF No. 33 at 4. This is a curious argument because The Gambia's actions here are nearly identical to those of the prevailing party, Falmouth, in that case: "Falmouth successfully defended against Ms. M's claims before . . . the magistrate judge, and therefore had no reason to appeal. . . . [O]nce Ms. M appealed the magistrate judge's

3

recommendation, Falmouth did 'fairly raise' the issue when it notified the district court, *albeit in response to Ms. M's own objections*, that it challenged 'the Magistrate's Recommended finding . . .'" 847 F.3d at 26 (emphasis added).  Like Falmouth, The Gambia prevailed before the magistrate judge on the SCA issue and therefore had no reason to file objections on that issue.  Once Facebook appealed the magistrate judge's ruling on that issue, The Gambia did more than "fairly raise" the authorized user issue when it notified this Court, in response to Facebook's objections, of "two alternative grounds" for upholding the magistrate judge's order, "each of which was fully presented below." ECF No. 27 at 45.

      Finally, Facebook misconstrues The Gambia's point about how "this Court deviated from the technical requirements of Rule 72(b) by both enlarging the time to file objections and requiring only Facebook to file 'objections' and The Gambia 'to respond' even though the Court knew that The Gambia was seeking to file objections." ECF No. 32 at 7–8 (citing 9/30/21 Minute Order).  The Gambia's point was not that it was "confused" about "when" to file objections or that "The Gambia had no opportunity to file its own objections," as Facebook contends.  ECF No. 33 at 4–5.  Of course, The Gambia knew that it could file objections when it submitted its response and, in fact, did file objections with respect to the magistrate judge's adverse ruling on depositions.  Rather, The Gambia's point was that the Court should not punish The Gambia for allegedly deviating from the technical requirements of Rule 72(b) by  labeling its disagreement with the magistrate judge's ruling as "alternative grounds" instead of as "objections" when the Court itself deviated from the technical requirements of Rule 72(b) by enlarging the time period to file objections beyond the 14 days established by Rule 72(b) and by ordering The Gambia "to respond" to Facebook's objections instead of ordering The Gambia to submit its own "objections."  But in any event, that is largely beside the point, because the law is clear that a prevailing party need not

4

object to, or appeal from, a ruling in its favor. It can urge affirmance on any ground raised before the magistrate, and a reviewing court must consider those grounds before it overturns the lower court's decision.

## II. FACEBOOK APPLIES AN INCORRECT STANDARD FOR RECONSIDERATION UNDER RULE 54(B) BY ARGUING THAT THE GAMBIA MUST PROVE IT WILL PREVAIL ON THE MERITS TO WARRANT RECONSIDERATION.

With little to say on the sole (procedural) question presented by the motion for reconsideration, Facebook devotes most of its brief to arguing the merits of The Gambia's alternative grounds. *See* ECF No. 33 at 5–13. Facebook attempts to justify its focus on the merits by arguing, without citation, that The Gambia must prove it will ultimately prevail on its alternative grounds in order to obtain reconsideration. *See id.* at 5 ("The Gambia has failed to show its 'alternative' arguments warrant reconsideration"); *id.* at 5-6 ("The Gambia makes no effort to show that the Court's reconsideration of its 'alternative' arguments would compel a different result."); *see also id.* ("The Gambia's failure to demonstrate the correctness of its two 'alternative' arguments in its Motion is reason enough to deny its request to revisit those arguments on the merits now."). According to Facebook, the Court's refusal to consider the merits of The Gambia's "alternative grounds" cannot be a "clear error" unless The Gambia proves in its motion for reconsideration the correctness of its alternative grounds. Facebook is wrong.

The "clear error" at issue in this motion was the Court's refusal to even consider The Gambia's alternative grounds. Whether The Gambia will ultimately prevail on those alternative grounds, *following* consideration of the issue by the Court, is a separate question. Make no mistake: The Gambia should prevail and believes it will prevail on its alternative grounds argument once the Court considers the issue. But whether the Court clearly erred by refusing to even

5

consider the alternative grounds is a separate question from whether The Gambia will ultimately prevail on those alternative grounds.

Facebook's reliance on this Court's opinion in *Cable News Network, Inc. v. Federal Bureau of Investigation*, 401 F.Supp.3d 187 (D.D.C. 2019), is misplaced. In that case, the FBI moved to alter or amend a judgment pursuant to Rule 59(e) on the grounds that the Court had committed "clear error" by not considering Freedom of Information Act Exemption 3. *Id*. at 189. The FBI conceded that it had not even mentioned Exemption 3 in any of its filings but claimed that it had "effectively asserted" Exemption 3. *Id*. at 191, 192. Describing the FBI's position as taking "chutzpah" and applying the "stringent" standard to be applied to Rule 59(e) motions, the Court denied the FBI's motion, stating: "Urging the Court to consider an argument that Defendant 'did not expressly mention' but claims to have 'effectively asserted' . . . does not come close" to showing "clear error." *Id*. at 189, 190, 193.

Here, in contrast, The Gambia had clearly laid out its alternative grounds in two-plus pages of briefing in its response to Facebook's objections, *see* ECF No. 27 at 38–40, and cited to the briefs below where those same arguments were raised before the magistrate judge over many more pages of briefing, *see id.* at 38 (citing to ECF No. 10 at 5–11 and ECF No. 16 at 2–5). Unlike the FBI, the Gambia did "spell out [its] arguments squarely and distinctly." 401 F.Supp.3d at 192 (internal quotations omitted). Facebook seems to be arguing that The Gambia's two-plus pages of briefing before this Court was too cursory, but there is no law to support such an argument, and, as Facebook fails to recognize, The Gambia had prevailed before the magistrate judge and was therefore asking this Court to affirm the magistrate judge's order below, not to overrule it.[1]

---

[1] Facebook accuses The Gambia of waiving its alternative grounds arguments for being too cursory (despite multiple pages of briefing on these issues), even while Facebook recently argued before this Court that it had not waived its "Remote Computing Service" argument by merely "preserv[ing] the issue

Finally, The Gambia's motion for reconsideration was brought under the more discretionary Rule 54(b), not the more "stringent" Rule 59(e). *See Banks v. Booth*, 518 F.Supp.3d 57, 62 (D.D.C. 2021) ("The Court has broad discretion to grant relief under either [R]ule [54(b) or Rule 59(e)], though the Court has more discretion to grant a motion under Rule 54(b).") (internal quotations omitted); *see id.* at 62, 63 (referring to the standard for reconsideration under Rule 54(b) as "affording the Court most flexibility" and describing motions under Rule 59(e) as "disfavored").

Facebook latches onto the court's observation at the end of *Cable News Network* that the FBI did not "wrestle with [the merits], much less establish the correctness of its position" in its motion for reconsideration (401 F.Supp.3d at 193) to suggest that the merits are relevant to the Court's resolution of The Gambia's motion for reconsideration. *See* ECF No. 33 at 6. But the court's comment in *Cable News Network* was made in the context of "one quick note . . . [b]efore wrapping up this matter" and was not the basis of the court's ruling but merely an additional "deficiency" that "adds to the stack of reasons counseling against reopening this can of worms." 401 F.Supp.3d at 193. Here, the can of worms has barely been opened, and, in any event, The Gambia's alternative grounds' position is correct.

\*\*\*

As discussed, the merits of The Gambia's alternative grounds are irrelevant to the Court's ruling on The Gambia's motion for reconsideration. In the event the Court thinks otherwise, we briefly review those alternative grounds here because they are meritorious. *See also* ECF No. 27 at 38–40; ECF No. 10 at 5-11; ECF No. 16 at 2-5.

---

for a later procedural stage" in a footnote. ECF No. 28 at 9. While it is true that a placeholder footnote is not enough for preservation purposes, multiple pages of argument on these issues is.

7

First, the SCA does not protect the private communications of foreign government officials. There is no question that the SCA was enacted to provide privacy protection to internet *users*. *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1212 (2004) (discussing why the SCA was enacted and explaining that the SCA "offer[s] network *account holders* a range of statutory privacy rights against access to stored account information held by network service providers") (emphasis added); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004) ("The [SCA] reflects Congress's judgment that *users* have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility.") (emphasis added). As Facebook recognizes, the prohibitions against disclosure of electronic communications apply to an "electronic communication service" (18 U.S.C. § 2702(a)(1)), which is defined as "any service which provides to *users* thereof the ability to send or receive wire or electronic communications" (18 U.S.C. § 2510(15) (emphasis added)). If foreign government officials are not "users," then the prohibitions do not apply because Facebook is not acting as an electronic communication service with regard to their communications.

The question, then, is whether foreign government officials are "users" entitled to the SCA's privacy protections. The answer is no. Under the SCA's definitions, a "user" is a "person or entity." 18 U.S.C. § 2510(13). A foreign government official is obviously not an entity. A foreign government official is also not a "person" under the SCA's definition. A "person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." § 2510(6). The definition, in other words, expressly mentions *U.S.* government officials, but not *foreign* government officials. "[W]hen Congress includes particular language in one section of

8

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *New York v. U.S. EPA*, 413 F.3d 3, 39 (D.C. Cir. 2005) (quotation and citations omitted). If Congress intended to include all government officials under the definition, it would have said so, or in the very least, it would not have identified only U.S. government officials in the definition. Nor can it be said that foreign government officials fall within the definition of an "individual." If government officials were included in the definition of "individual," the express reference to U.S. government officials in the preceding clause would be surplus. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' . . . . We are thus 'reluctant to treat statutory terms as surplusage' in any setting."); *Market Co.* v. *Hoffman,* 101 U. S. 112, 115-16 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'"). Thus, foreign government officials are not entitled to the privacy protections of the SCA and tellingly, Facebook does not have any answer to this point, entirely ignoring the import of the statutory reference to U.S. government officials, not foreign government officials.[2] Instead, Facebook wants the Court to re-write the statutory definition of

---

[2] Facebook cites *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 729 (9th Cir. 2011), in support of its position that "[f]oreign persons who happen to be government officials" fit within the SCA's definition of "user." ECF No. 33 at 7. But The Gambia is not arguing that the SCA does not protect the communications of foreign persons generally. Rather, the SCA does not protect the communications of foreign *government officials*. Importantly, *Suzlon* involved an Indian citizen, not an Indian government official, and the court in *Suzlon* did not consider whether the definition of "person" in 18 U.S.C. 2510(6) includes foreign government officials. *See* 671 F.3d at 729. The other cases cited by Facebook (*see* ECF No. 33 at 8) are similarly inapplicable because either they do not involve foreign government officials at all or they do not address the question of whether the SCA's express inclusion of U.S. government officials within the definition of "user" means that foreign government officials are not included.

9

"person" by adding the term "and foreign" to the portion that expressly includes U.S. government officials.  The Court should decline the invitation.

Second, the SCA does not protect the communications of unauthorized users.  A "user" is "any person or entity who (A) uses an electronic communication service; and (B) is *duly authorized by the provider of such service to engage in such use*."  18 U.S.C. § 2510(13) (emphasis added).  Here, the Myanmar government officials whose communications are sought by the subpoena were not "duly authorized" by Facebook to engage in "'coordinated inauthentic behavior' designed to perpetuate misinformation and hate speech targeting the Rohingya."  ECF No. 22 at 6.  Indeed, Facebook's own terms and conditions warn that Facebook will disclose information where it has a "good-faith belief it is necessary to: detect, prevent and address … unauthorized use of [its] Products, violation of [its] terms or policies, or other harmful or illegal activity."  *Data Policy*, FACEBOOK (Jan. 4, 2022), https://www.facebook.com/about/privacy/update.  And Facebook ultimately removed the accounts and pages of users who violated Facebook's terms and conditions.  *See, e.g., Removing Myanmar Military Officials from Facebook,* Facebook (Aug. 28, 2018) (updated Dec. 18, 2018), https://about.fb.com/news/2018/08/removing-myanmar-officials/ ("Today, we are taking more action in Myanmar, removing a total of 18 Facebook accounts, one Instagram account and 52 Facebook Pages, followed by almost 12 million people. We are preserving data, including content, on the accounts and Pages we have removed.").  Given that Facebook itself removed these officials for using its platform in an unauthorized manner, it is hard-pressed to argue otherwise, which is why its arguments on this point fall flat.

***

Facebook's final argument – that "The Gambia's 'alternative arguments' are not supported by the record" (ECF No. 33 at 12) – can be dispensed with rather quickly.  Facebook did not make

this argument previously (*see* ECF No. 28) and, in any event, it is not true. Magistrate Judge Faruqui found that the deleted and banned accounts were those of "key individuals and organizations in Myanmar – including the commander-in-chief of Myanmar's armed forces and the military's television network" and that "Myanmar officials surreptitiously controlled" the "'seemingly independent news and opinion Pages [that] covertly push[ed] the messages of the Myanmar military.'" ECF No. 22 at 6. It is undisputed that many of the deleted Facebook accounts were controlled by Myanmar government officials, which is why The Gambia has brought suit against Myanmar in the ICJ and seeks the content at issue.

## CONCLUSION

Facebook successfully persuaded this Court to ignore The Gambia's alternative arguments for upholding the magistrate judge's order. It was clear error to do so as settled law allows a prevailing party to advocate for affirmance on alternative grounds, and Facebook has not cited a single case showing otherwise. This Court should grant the motion for reconsideration and rule on The Gambia's alternative grounds for upholding the magistrate judge's Order. Those arguments have merit, moreover, and as a result, the Court should uphold the magistrate judge's order, which correctly ruled that the SCA did not prevent it from receiving the contents of coordinated and inauthentic communications made by foreign officials who were not duly authorized to use the Facebook platform in such a manner.

12

| | |
|---|---|
| Dated: January 24, 2022 | Respectfully submitted, |
| | */s/ Timothy P. O'Toole* |
| | Timothy P. O'Toole (D.C. Bar No. 469800) |
| | Michael J. Satin (D.C. Bar No. 480323) |
| | MILLER & CHEVALIER CHARTERED |
| | 900 16th Street, N.W. |
| | Washington, D.C. 20006 |
| | Telephone: (202) 626-5552 |
| | Fax: (202) 626-5801 |
| | totoole@milchev.com |
| | msatin@milchev.com |
| | |
| | *Counsel for Applicant, The Republic of The Gambia* |

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Michael J. Satin*
Michael J. Satin (D.C. Bar No. 480323)