UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REPUBLIC OF THE GAMBIA,**<br><br>Petitioner,<br><br>v.<br><br>**META PLATFORMS, INC.,**<br><br>Respondent. | Miscellaneous Action No. 20-36 (JEB) |

## MEMORANDUM OPINION

Several months ago, this Court reversed the Order of a Magistrate Judge and concluded that the Stored Communications Act blocks Respondent Meta Platforms from disclosing the contents of certain accounts, posts, and communications that it had deleted from its website. Petitioner Republic of The Gambia, which seeks that content in connection with an International Court of Justice proceeding, now challenges this Court's decision in that Opinion not to address The Gambia's alternative grounds for upholding the Magistrate Judge's finding. Determining that those alternative grounds have no merit, the Court will deny Petitioner's Motion for Reconsideration.

**I.    Background**

As this Court recently recounted the factual and procedural background of this case, it provides only a brief overview here that relates to the current dispute; it refers interested readers to its earlier Opinion. See Republic of The Gambia v. Facebook, Inc. (Facebook I), No. 20-36, 2021 WL 5758877 (D.D.C. Dec. 3, 2021).

1

In that Opinion, this Court agreed with Meta that the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, prevented the platform from providing to The Gambia private pages and communications that it had removed from its website. See Facebook I, 2021 WL 5758877, at *3–6. Believing that those accounts and pages were used by Myanmar officials to propagate anti-Rohingya sentiment, The Gambia wishes to use their contents in support of its prosecution of Myanmar in the International Court of Justice. Id. at *1. In its ruling, the Court vacated the portions of Magistrate Judge Faruqui's Order, see ECF No. 22 (MJ Order), that had found that the SCA did not protect the communications at issue. The Court also declined to reach The Gambia's arguments that the Magistrate Judge's Order should be upheld on alternative grounds — namely, that the holders of the relevant accounts did not fall within the SCA's ambit. See Facebook I, 2021 WL 5758877, at *6. It found that The Gambia had not properly presented these arguments and, accordingly, gave them no consideration. Id.

Petitioner has now filed a Motion for Reconsideration, arguing that this Court's decision not to examine its alternative arguments was improper. See ECF No. 32 (Pet. Motion to Reconsider).

**II.     Legal Standard**

Because Petitioner seeks reconsideration of an interlocutory order, Federal Rule of Civil Procedure 54(b) governs the Court's analysis. See Prince George's Hospital Center v. Advantage Healthplan Inc., 985 F. Supp. 2d 38, 42 (D.D.C. 2013) ("Rule 54(b) is the appropriate procedural mechanism for reconsideration where, as here, the challenged order . . . does not constitute a final judgment."). "The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008). Petitioner has a lower bar to clear, as

"reconsideration of an interlocutory decision is available under the standard 'as justice requires.'" Judicial Watch v. Department of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006); accord Lemmons v. Georgetown University Hospital, 241 F.R.D. 15, 21–23 (D.D.C. 2007).

The "as justice requires" standard may be met where, for example, the court "has patently misunderstood" the parties, strayed far afield of the issues presented, or failed to consider "a controlling or significant change in the law or facts . . . since the submission of the issue." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citations and quotation marks omitted). "These considerations leave a great deal of room for the court's discretion, and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" Lewis v. District of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting Cobell, 224 F.R.D. at 272). A court's discretion under Rule 54(b), however, is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Singh v. George Washington University, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted) (quoting In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004)).

A district court's review of a magistrate judge order is governed by Fed. R. Civ. P. 72. When reviewing non-dispositive orders, a court must "set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard provides for deferential review of factual findings, but the "contrary to law" standard "permits *de novo* review of a magistrate judge's legal conclusions." American Center for Civil Justice v. Ambush, 794 F. Supp. 2d 123, 129 (D.D.C. 2011) (citations omitted). Review of dispositive orders, conversely, is governed by Rule 72(b), which provides that courts should conduct *de*

3

*novo* review of any part of a magistrate judge's order to which a party has objected. See Fed. R. Civ. P. 72(b)(3). Since the Court now confronts only challenges to the Order's legal conclusions, whether such Order is considered non-dispositive or dispositive — a question that appears to remain open in this district — is of no consequence. The Court will thus apply *de novo* review to its consideration of the Magistrate Judge Order.

**III.    Analysis**

The Gambia's present Motion focuses on the Court's alleged error in declining to consider its alternative arguments in the last Opinion. See Pet. MTR at 4–8. The Court addresses the procedural issue briefly before examining the merits of those alternative grounds, drawing also from prior rounds of briefing.

   A.    Forfeiture

In his Order granting The Gambia's request for the content in Meta's possession, Magistrate Judge Faruqui agreed with Petitioner that provider-deleted communications were not stored "for purposes of backup protection" and thus not subject to § 2702(a)(1)'s disclosure prohibition. See MJ Order at 12–18. Although it did not affect the result, that Order also rejected The Gambia's alternative grounds for finding these communications outside the SCA's scope. Id. at 10–11.

This Court vacated the Magistrate Judge Order's holding as to the interpretation of "for purposes of backup protection," ruling that private, provider-deleted communications are protected under the SCA. See Facebook I, 2021 WL 5758877, at *6. It declined to reach The Gambia's alternative grounds because, while discussed in their briefing before this Court, they were not properly presented as objections to a specific portion of the Magistrate Judge Order, as required by Local Rule 72.2(b). Id.

4

The Gambia now challenges the latter decision. The crux of its position is that this Court clearly erred when it declined to consider Petitioner's alternative grounds for upholding the Magistrate Judge Order. See Pet. MTR at 4–8. In essence, The Gambia accuses the Court of prioritizing form over substance and penalizing it for titling its arguments "alternate grounds" rather than "objections" to the Order. Id. Although the Court continues to believe that The Gambia did not technically comply with the requirements of Local Rule 72.2(b), there is no reason to discuss this matter further since the Court finds the merits of The Gambia's arguments unpersuasive.

### B. The Gambia's Alternative Grounds

The Gambia believes that the removed communications are not protected by the SCA because the posters of those communications are not "users" within the Act's definition of that term. See ECF No. 27 (Pet. Response to Resp. Objections) at 38–40. In particular, Petitioner advances two arguments: 1) Myanmar government officials, who comprise some portion of the posters, are not "users" because Congress excluded foreign-government officials from that term's scope, id. at 38–39, and 2) "users" encompasses only those "authorized" to use the ECS, which does not include posters who violate an ECS's terms of service and are subsequently removed. Id. at 39–40. Because The Gambia's argument relies on a "stacking doll of definitions," MJ Order at 10, the Court begins by reviewing the relevant statutory provisions.

Section 2702(a)(1) of the SCA prohibits one who provides an "electronic communication service" to the public from voluntarily divulging the contents of a communication held in its electronic storage, as the Court explained in its previous Opinion. See Facebook I, 2021 WL 5758877, at *3. "Electronic communication service" is defined elsewhere as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18

U.S.C. § 2510(15) (emphasis added). "User" encompasses "any person or entity who" uses the service and "is duly authorized by the provider of such service to engage in such use." Id. § 2510(13). "Person" is defined, in turn, as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." Id. § 2510(6).

As an initial matter, the Court observes that the statutory provision at the heart of this dispute, Section 2702(a)(1), makes no mention of "users." See also ECF No. 33 (Resp. MTR Opp.) at 7. Instead, the provision prohibits, subject to the exceptions listed in § 2702(b), the release of communications held in electronic storage by an ECS with no consideration of who created those communications. See 18 U.S.C. § 2702(a)(1); MJ Order at 10 n.4 (making same point). The § 2702(b) exceptions — which exempt, for example, disclosure to an intended recipient or with the originator's consent — do not exempt foreign-government officials. Id. § 2702(b). It is arguable, therefore, that The Gambia's case never even gets off the ground. Since the Court finds each of Petitioner's subsequent arguments unpersuasive, it need not decide whether the language of § 2702(a)(1) is sufficient on its own to resolve this challenge.

The SCA's plain text belies The Gambia's first contention that Myanmar government officials are not "users" covered by the statute. The Act defines "user" to encompass "any person or entity." 18 U.S.C. § 2510(13) (emphasis added). As other courts have recognized, this "very broad term" is limited by only two qualifications — that one use an ECS and be authorized to do so — neither of which would exclude foreign-government officials. See Suzlon Energy Ltd. v. Microsoft Corp., 671 F.3d 726, 729 (9th Cir. 2011) (rejecting argument that foreign citizens are not "users" under the SCA). "Any person," therefore, "means any person." Id.

The Gambia nonetheless asserts that the intended exclusion of foreign-government officials is revealed at the next layer of the SCA's nesting definitions, where the statute defines "person" to include "any employee, or agent of the United States . . . and any individual . . . ." 18 U.S.C. § 2510(6). According to The Gambia, because the statute explicitly mentions employees and agents of the United States — even though they could have been encompassed by the term "individual" — it intends to exclude employees and agents of any other government. See Pet. Response to Resp. Obj. at 38. That argument reads too much into too little. Rather than evincing an intent to exclude foreign-government officials from the definition, the explicit mention of U.S. government officials merely acts to underscore those individuals' inclusion. Cf. Marx v. General Revenue Corp., 568 U.S. 371, 385 (2013) ("The canon against surplusage is not an absolute rule."); Cook Inlet Tribal Council, Inc. v. Dotomain, 10 F.4th 892, 896 (D.C. Cir. 2021) (interpreting another statute in "a belt-and-suspenders manner"). It does nothing to remove foreign-government officials from the scope of "individual," under the plain meaning of which they naturally fit. See Individual, The American Heritage Dictionary of the English Language (3d ed. 1992) (published six years after SCA's passage) (defining "individual" as "[a] single human being considered apart from a society or community"). The Court, accordingly, finds The Gambia's first argument unavailing.

Its next fares little better. This time, Petitioner focuses on the definition of an "electronic communication service." That term is key because the relevant portion of Section 2702's disclosure prohibition is directed to ECSs, and so whether Meta is an ECS as to the communications The Gambia seeks is determinative of whether those communications are entitled to SCA protection. Petitioner contends that Meta is not an ECS as to these communications because an ECS provider is one who provides services to "users," and only

those who both use an ECS and are "<u>duly authorized</u> by the provider of such service to engage in such use" qualify as "users." 18 U.S.C. § 2510(13), (15) (emphasis added). The creators of the content at issue here cannot be "users," says The Gambia, since Meta removed their accounts and posts, making clear that they are not "duly authorized" to use Meta's platform and apps. See Pet. Response to Resp. Obj. at 39–40. "Authorized," The Gambia further asserts, should be interpreted according to common-law trespass principles, under which the creators of the content at issue here did not have proper authorization because they misrepresented their intended use of Meta's platforms. Id.

Meta rejoins that The Gambia's reading of "user" cannot be correct. Once again, Respondent points out, the term does not appear in the relevant provision of the statute. See Resp. Opp. to MTR at 10. To understand "user" to exclude those removed from a platform for terms-of-service violations would, in its view, grant service providers too much power. See ECF No. 15 (Resp. Surreply before Magistrate Judge) at 6. It would also misunderstand the role "user" plays in the broader scope of the SCA, which is to distinguish hackers from those who may authorize access to communications. See ECF No. 28 (Resp. Repl. in Support of Obj. to MJ Order) at 17–18; Resp. Opp. to MTR at 11; 18 U.S.C. § 2701(c)(2) (allowing a "user" to authorize access to her communications). It might even risk subjecting users to criminal liability for accessing their own communications. See Resp. Opp. to MTR at 11.

Without reaching Meta's last arguments, the Court agrees with its ultimate position: "user" cannot be defined to remove SCA protection for communications that a provider deletes from its platform. Recall that the term "user" appears nowhere in Section 2702. Instead, that section broadly prohibits disclosure of "the contents of a communication" without consideration

8

of the communication's creator or subject matter. See 18 U.S.C. § 2702(a). The Court thus doubts that the definition of "user" has much bearing on the reach of Section 2702.

Even accepting that the Act's definition of "user" is properly considered here, however, the Court believes that such term cannot be read as The Gambia proposes. The problem with Petitioner's interpretation is essentially the same as with its proposed reading of "for purposes of backup protection," which the Court rejected in its earlier Opinion. See 18 U.S.C. § 2510(17) (defining "electronic storage"). As the Court explained there, a Congress concerned with restricting providers' ability to disclose communications would not have granted them the authority to determine when those communications should receive protection. See Facebook I, 2021 WL 5758877, at *5. But that is precisely what The Gambia's interpretation would do. Under its reading, a provider could find that an account or posting violated its terms of service — which it defines free of government oversight — remove that account, and exempt those communications from the SCA protection they previously enjoyed. In other words, the SCA-on/off switch would be back in providers' hands. Id. This would thus offer considerably less privacy protection for users.

The text of the SCA is consistent with the Court's reading, moreover. The Act's requirement that a user be "duly authorized" by a provider to use its services simply means that the person or entity must be one to whom a provider properly grants permission to use those services. See 18 U.S.C. § 2510(13); Duly, The American Heritage Dictionary of the English Language (defining "duly" as "[i]n a proper manner"); Authorize, id. ("To grant authority or power to."). The creators of the content at issue in this case received that grant of authority when Meta permitted them to join its platform and use its apps — just as nearly any member of the public who sought to sign up for Meta would. The Gambia has put forth no evidence that they

9

gained that permission through misrepresentation. That the content creators later exceeded the scope of that permission, as evidenced by Meta's decision to remove their accounts, does not alter the fact that they were "duly authorized" by the platform at the outset. It would thus make little sense to find that these entities were not "users" of Meta's ECS because they eventually violated the terms Meta imposed on their use of its platform. A more natural reading of the SCA's text would understand these individuals to have been "duly authorized" "users" of Meta's services until Meta removed their accounts, at which point they ceased to be "duly authorized" and Meta ceased to be an ECS as to their content. Because the communications at issue were created prior to Meta's revoking the creators' authorization, the creators fall within the Act's definition of "user." 18 U.S.C. § 2510(13).

The Court, consequently, finds that The Gambia has offered no valid basis to vacate Magistrate Judge Faruqui's determination on this issue or to require Meta to turn over the disputed content.

### IV.   Conclusion

For the foregoing reasons, Petitioner's Motion to Reconsider will be denied. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 3, 2022